Opinion by Judge IKUTA; Dissent by Judge CALLAHAN; Dissent by Judge SILVERMAN.
OPINION
IKUTA, Circuit Judge:
Plaintiffs Augusta Millender, Brenda Millender, and William Johnson (collectively, “the Millenders”) filed this suit under 42 U.S.C. § 1983 against the County of Los Angeles, the Los Angeles County Sheriffs Department, and several individual members of the Sheriffs Department, alleging violations of their civil rights. Their complaint arose from a search pursuant to a warrant obtained by Detective Curt Messerschmidt of the Los Angeles County Sheriffs Department and executed under the supervision of Sergeant Robert Lawrence. Messerschmidt and Lawrence (collectively, “the deputies”) appeal from the district court’s determination that they were not entitled to qualified immunity with respect to the alleged overbreadth of the search warrant. Because the challenged sections of the warrant were “so lacking in indicia of probable cause as to render official belief in its existence unreasonable,” Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), we affirm. '
I
On November 4, 2003, Messerschmidt applied for an arrest warrant for Jerry Ray Bowen at 2234 E. 120th St., Los Angeles, and for a warrant to search that address and seize specified property in connection with “a spousal assault and an assault with a deadly weapon.” Messerschmidt prepared an affidavit, entitled “Statement of Probable Cause.” The affidavit contained the following facts: The victim of the assault, Shelly Kelly, stated that she had a “dating relationship” with the suspect, Bowen. Kelly decided to end the relationship due to Bowen’s violent temper and because Bowen had previously physically assaulted her. Because of Bowen’s violent nature, Kelly asked the Sheriffs Department to send officers to protect her while she gathered some of her property from the residence that she and Bowen shared. Once the requested officers arrived, Kelly began to move her property to her ear. After approximately twenty minutes, the officers received an emergency call and had to leave, saying they would return after they handled the call.
According to Kelly, as soon as the officers left, Bowen appeared and screamed, “I told you to never call the cops on me bitch!” Bowen physically assaulted Kelly and attempted to throw her over the top railing of the second story landing of their residence. Bowen grabbed Kelly, bit her, and tried to drag her by the hair back into their residence. When Kelly resisted by bracing herself against the door, Bowen grabbed both of Kelly’s arms, but Kelly was able to slip out of her shirt and run to her car. Bowen followed seconds later, now holding “a black sawed off shotgun with a pistol grip.” Standing in front of Kelly’s car, Bowen pointed the shotgun at Kelly and shouted, “If you try to leave, I’ll kill you bitch.” Kelly was able to escape by leaning over in her seat and flooring the gas. Bowen jumped out of the way and fired one shot at her, blowing out the front left tire of Kelly’s car. Chasing the car on foot, Bowen fired four more times in Kelly’s direction, missing her each time.
*1021 Shortly after, Kelly located police officers who immediately recognized her as the same person they had been protecting before they left for the emergency call. Kelly reported the shooting, described Bowen’s firearm as a “black sawed off shotgun with a pistol grip,” and gave the officers four photos of Bowen to aid their investigation.
Based on this information, Messerschmidt put a photo of Bowen into a “six pack” line-up. When Messerschmidt showed the photo line-up to Kelly, she immediately identified Bowen and circled his picture. Messerschmidt’s affidavit states that “[t]he person [Kelly] identified is Jerry Ray Bowen ..., a known Mona Park Crip gang member.” Kelly told Messerschmidt that Bowen’s current address was 2234 E. 120th St., Los Angeles.
Messerschmidt requested a “Ramey Warrant” to arrest Bowen, because Kelly knew him personally and identified him as the person who physically assaulted and shot at her.[1] According to the affidavit, Messerschmidt conducted an “extensive background search” on Bowen using “departmental records, state computer records, and other police agency records.” Using these records and information provided by Kelly, Messerschmidt confirmed that Bowen resided at 2234 E. 120th St. in Los Angeles.
Messerschmidt’s affidavit also requested night service of the search warrant, giving two reasons. First, “the investigation has shown that the primary suspect in this case has gang ties to the Mona Park Crip gang based on information provided by the victim and the cal-gang data base.” Second, Messerschmidt believed that “the nature of the crime (Assault with a deadly weapon) goes to show that night service would provide an added element of safety to the community” as well as to those personnel serving the warrant. The affidavit concluded by stating that Messerschmidt “believes that the items sought will be in the possession of Jerry Ray Bowen and the recovery of the weapon could be invaluable in the successful prosecution of the suspect involved in this case, and the curtailment of further crimes being committed.”
In addition to preparing the affidavit, Messerschmidt completed a “Search Warrant and Affidavit” form to authorize the search of the residence identified in “Attachment 1” and the seizure of property identified in “Attachment 2.” Attachment 1 identifies the “location to be searched” as 2234 E. 120th St. in Los Angeles. Attachment 2 sets out two categories of items to search and seize. The first paragraph lists:
All handguns, rifles, or shotguns of any caliber, or any firearms capable of firing ammunition, or firearms or devices modified or designed to allow it to fire ammunition. All caliber of ammunition, miscellaneous gun parts, gun cleaning kits, holsters which could hold or have held any caliber handgun being sought. Any receipts or paperwork, showing the purchase, ownership, or possession of the handguns being sought. Any firearm for which there is no proof of ownership. Any firearm capable of firing or chambered to fire any caliber ammunition.
The second paragraph lists:
Articles of evidence showing street gang membership or affiliation with any Street Gang to include but not limited to any reference to “Mona Park Crips”, *1022 including writings or graffiti depicting gang membership, activity or identity. Articles of personal property tending to establish the identity of person [sic] in control of the premise or premises. Any photographs or photograph albums depicting persons, vehicles, weapons or locations, which may appear relevant to gang membership, or which may depict the item being sought and or believed to be evidence in the case being investigated on this warrant, or which may depict evidence of criminal activity. Additionally to include any gang indicia that would establish the persons being sought in this warrant, affiliation or membership with the “Mona Park Crips” street gang.
An additional attached affidavit recounts Messerschmidt’s experience in gang investigations. The Search Warrant includes Messerschmidt’s attestation that the incorporated affidavit is true and the property described in Attachment 2 is lawfully seizable.
Messerschmidt also drafted a “Probable Cause Arrest Warrant and Affidavit in Support Thereof’ to authorize the arrest of Bowen, which again states his address as 2234 E. 120th St., Los Angeles. This arrest warrant application incorporates Messerschmidt’s affidavit by reference.
Messerschmidt was aware of other relevant facts not included in the affidavit. First, Kelly explained to Messerschmidt that the address she gave him, 2234 E. 120th St., was the home of Bowen’s foster mother, Augusta Millender. Second, Messerschmidt knew that Bowen had a previous criminal record and was on summary probation for spousal battery and driving without a license.[2] Bowen also had several previous felony convictions and misdemeanor arrests, and was a “third strike candidate” under California law.[3] Third, in addition to identifying the gun Bowen used as a black sawed-off shotgun with a pistol grip, Kelly gave Messerschmidt a picture of Bowen posing with the gun. Fourth, there was no evidence that Bowen’s assault on Kelly was in any way gang-related. In subsequent testimony, Messerschmidt answered “No” to the question, “So you didn’t have any reason to believe that the assault on Kelly was any sort of a gang crime, did you?”
Before Messerschmidt submitted the warrants and affidavit to the magistrate, they were reviewed by his supervisors in the Sheriffs station, Sergeant Lawrence and Lieutenant Ornales. In addition, Deputy District Attorney Janet Wilson signed the search warrant, indicating that she had reviewed it for probable cause and approved it. Messerschmidt presented the Search Warrant and Affidavit and the Probable Cause Arrest Warrant, along with their attachments (including the affidavit), to a magistrate. The magistrate approved both warrants and authorized night service.
At 5:00 a.m. on the morning of November 6, 2003, the Sheriffs Department’s SWAT team served the search and arrest warrants at the 120th St. address. The SWAT team forced open the front security door, broke a front window, and proceeded to enter, search, and clear the house. The ten occupants of the house, including the Millenders, were ordered to exit, which they did. Once the SWAT team had secured the residence, investigators searched the area. While Messerschmidt and Lawrence did not participate in the search, they were both present. The investigators *1023 conducting the search failed to find Bowen or a black sawed-off shotgun with a pistol grip. However, they did find and take Augusta Millender’s personal shotgun (a black 12-gauge “Mossberg” with a wooden stock), a box of .45 caliber “American Eagle” ammunition, and a letter from Social Services addressed to Bowen. Some two weeks later, Messerschmidt, without SWAT assistance, arrested Bowen in the middle of the day after discovering Bowen hiding under a bed in a motel room.
The Millenders filed suit under 42 U.S.C. § 1983 against the County of Los Angeles, the Los Angeles County Sheriffs Department, Sheriff Leroy Baca, and 27 Los Angeles County deputies, including Messerschmidt and Lawrence. As relevant here, the Millenders alleged violations of their Fourth and Fourteenth Amendment rights. The parties filed cross motions for summary adjudication on the validity of the arrest and search warrants. The district court concluded that the arrest warrant was facially valid, and granted the defendants’ motion for summary adjudication on this issue. The Millenders have not appealed this ruling.
The district court also held that the warrant’s authorization to search for and seize all firearms, firearm-related materials, and gang-related items was unconstitutionally overbroad, but that its authorization to search for evidence tending to establish control of the premises was constitutional. Accordingly, the court granted the Millenders’ motion for summary adjudication as to firearm- and gang-related evidence, but granted the defendants’ motion as to identification evidence. The district court then rejected the deputies’ claim of qualified immunity on the ground that the deputies’ actions were not objectively reasonable.
Messerschmidt and Lawrence timely appealed the district court’s determination that they were not entitled to qualified immunity.
II
Although we normally lack jurisdiction to consider the denial of a motion for summary judgment, we may consider an appeal from such an interlocutory motion where the motion is based on a claim of qualified immunity, KRL v. Estate of Moore, 512 F.3d 1184, 1188 (9th Cir.2008), even when other claims against the defendants are pending below, Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). “Our jurisdiction ..., however, is limited to questions of law; it does not extend to claims in which the determination of qualified immunity depends upon disputed issues of material fact.” Schwenk v. Hartford, 204 F.3d 1187, 1195 (9th Cir.2000). When facts are disputed, “we assume the version of the material facts asserted by the non-moving party to be correct.” Id.; see also Groh, v. Ramirez, 540 U.S. 551, 562, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). We review the district court’s legal determinations de novo. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994); KRL, 512 F.3d at 1188.
III
“The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, — U.S. -, -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted). A police officer is not entitled to qualified immunity if: (1) the facts show that the officer’s conduct violated a plaintiffs constitutional rights; and (2) those rights were clearly established at the time of the *1024 alleged violation. See id. at 816. Although we have discretion to address these prongs in any order, see id. at 818, we begin in this case by considering whether the deputies’ conduct violated the Millenders’ constitutional rights, see id. at 816.
A
The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV. The Supreme Court has recognized that a search or seizure pursuant to an invalid warrant constitutes an invasion of the constitutional rights of the subject of that search “at the time of [the] unreasonable governmental intrusion.” United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); see also United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (“The wrong condemned by the [Fourth] Amendment is ‘fully accomplished’ by the unlawful search or seizure itself----”). Even when only a portion of a search warrant is invalid, the subject of the search suffers a constitutional violation. See United States v. Sears, 411 F.3d 1124, 1129 (9th Cir.2005); United States v. Spilotro, 800 F.2d 959, 967-68 (9th Cir.1986) (Kennedy, J.). A search warrant that is not issued “upon probable cause” is invalid. U.S. Const, amend. IV; Groh, 540 U.S. at 557, 124 S.Ct. 1284. “Probable cause exists when ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ” United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). To be valid, a search warrant must also “particularly describ[e]” the “things to be seized.” U.S. Const, amend. IV; see Groh, 540 U.S. at 557, 124 S.Ct. 1284.
 We read the Fourth Amendment as requiring “specificity,” which has two aspects, “particularity and breadth.” United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir.2009). “Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.” Id. (quoting In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 856-57 (9th Cir.1991)). In determining whether a warrant’s description is sufficiently specific to meet these Fourth Amendment requirements, we consider the following questions:
(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.
Spilotro, 800 F.2d at 963 (citations omitted). The first consideration encapsulates the overarching Fourth Amendment principle that police must have probable cause to search for and seize “all the items of a particular type described in the warrant.” In re Grand Jury Subpoenas, 926 F.2d at 857; see also SDI Future Health, 568 F.3d at 702-03; VonderAhe v. Howland, 508 F.2d 364, 369-70 (9th Cir.1974). The second and third factors are relevant to determining whether the warrant satisfies this general rule.
*1025 When considering challenges to warrants under this framework, we must be mindful that a “magistrate’s determination of probable cause should be paid great deference by reviewing courts.” Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotation marks omitted). The Supreme Court has directed us to take a practical approach in determining whether there is sufficient probable cause, and to avoid “interpreting affidavits in a hypertechnical, rather than a common-sense, manner.” Id. (brackets and internal quotation marks omitted). “Deference to the magistrate, however, is not boundless.” Leon, 468 U.S. at 914,104 S.Ct. 3405. We are not to “defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause.” Id. at 915 (citation and internal quotation marks omitted).
B
We begin by analyzing whether the warrant’s authorization to search for firearms and firearm-related materials satisfies the three-factor specificity framework. We first consider whether the deputies had probable cause to search for and seize “all the items of a particular type described in the warrant.” In re Grand Jury Subpoenas, 926 F.2d at 857. “The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity.” Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion). For example, probable cause to search for documents pertaining to “certain aspects of [an] operation” cannot justify the seizure of all documents in an office. United States v. Stubbs, 873 F.2d 210, 211 (9th Cir.1989).
As noted above, the warrant in this case authorizes a search for essentially any device that could fire ammunition, any ammunition, and any firearm-related materials. There is no dispute that the deputies had probable cause to search for and seize the “black sawed off shotgun with a pistol grip” used in the crime. But the affidavit does not set forth any evidence indicating that Bowen owned or used other firearms, that such firearms were contraband or evidence of a crime, or that such firearms were likely to be present at the Millenders’ residence. Nothing in the warrant or the affidavit provides any basis for concluding there was probable cause to search for or seize the generic class of firearms and firearm-related materials listed in the search warrant. As such, we conclude that “probable cause did not exist to seize all items of those particular types.” SDI Future Health, 568 F.3d at 705 (brackets and internal quotation marks omitted).
The rule that police must have probable cause for every item searched does not always invalidate warrants that authorize a search for classes of generic items. See Spilotro, 800 F.2d at 963. As the framework’s second consideration suggests, a broader search warrant may sometimes be valid if the warrant establishes standards that are sufficiently specific to “reasonably guide the officers in avoiding seizure of protected property” and to allow judicial review “to determine whether the instructions were followed and legitimate property and privacy interests were protected.” United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir.1982); see also United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.1984). Nevertheless, a warrant based on an affidavit describing “a few stolen diamonds” could not validly authorize a search for a broad category of “gemstones and other items of jewelry” because such a warrant would “provide[ ] no basis for distinguishing [the *1026 stolen] diamonds from others the government could expect to find on the premises.” Spilotro, 800 F.2d at 965.
More specific standards may be contained in an affidavit, rather than the warrant itself, only if: “(1) the warrant expressly ineorporate[s] the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search.” United States v. Kow, 58 F.3d 423, 429 n. 3 (9th Cir. 1995). Applying this principle, we upheld a warrant authorizing police officers to “search all motor vehicles and heavy equipment found on the premises” to determine which were stolen in part because the warrant incorporated an affidavit that established “procedures to differentiate stolen vehicles from those legally owned.” Hillyard, 677 F.2d at 1339, 1341; see also United States v. Adjani, 452 F.3d 1140, 1148-49 (9th Cir.2006).
In this case, the deputies argue that the affidavit narrowed the scope of the search warrant by including specific information about the crime at issue, the weapon used, and Bowen’s gang membership, and that this information cured any constitutional deficiency. The affidavit does satisfy the first prong of the Kow test: the district court found that the warrant expressly incorporated the affidavit by reference. But there is no evidence in the record, nor do the deputies argue, that the affidavit was physically attached to the warrant or accompanied the warrant on the search. Therefore, we cannot consider its effect. See United States v. Bridges, 344 F.3d 1010, 1018 (9th Cir.2003); see also Groh, 540 U.S. at 557, 124 S.Ct. 1284 (“The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents.”); Spilotro, 800 F.2d at 967; Hillyard, 677 F.2d at 1340.
Even if we could consider the affidavit, it still would not cure the warrant’s deficiencies. Messerschmidt did not use the affidavit at the Millenders’ residence to provide more specific direction to the investigators who searched the house, for instance by alerting the investigators as to what type of firearm (within the generic class of firearms described in the warrant) was used in the crime. Nor did the investigators executing the warrant understand the affidavit to narrow the scope of the search. Rather, they seized Augusta Mil-lender’s shotgun, which did not resemble the firearm described by Kelly: it had a wooden stock and was neither sawed-off nor had a pistol grip. As in Kow, where we held that an incorporated affidavit did not cure a facially invalid warrant, “there is absolutely no evidence in this case that the officers who executed the warrant, although instructed to read the affidavit, actually relied on the information in the affidavit to limit the warrant’s over-breadth.” 58 F.3d at 429. Accordingly, we cannot uphold the warrant based on objective standards in the affidavit.
Finally, as suggested by the framework’s third consideration, warrants may sometimes authorize a search for classes of generic items if the government was not “able to describe the items more particularly in light of the information available to it at the time the warrant was issued.” Spilotro, 800 F.2d at 963; see also Adjani, 452 F.3d at 1147-48. For example, in United States v. Storage Spaces Designated Nos. “8” and “49” Located at 277 East Douglas, we upheld a warrant authorizing search and seizure of a broad class of potentially misbranded drugs in part because the government did not have information allowing it to describe the drugs more specifically. 777 F.2d 1363, 1370 (9th Cir.1985). But where the police do have information more specifically describing the evidence or contra *1027 band, a warrant authorizing search and seizure of a broader class of items may be invalid. Thus, when “[u]pon the information available to it, the government knew exactly what it needed and wanted,” it was unconstitutional for a warrant to authorize “a massive reexamination of all records.” VonderAhe, 508 F.2d at 370; see also SDI Future Health, 568 F.3d at 704-05 (a portion of a search warrant authorizing the search for “Documents relating to non-privileged internal memoranda and Email” held invalid when the government’s interest was limited to communications related to sleep studies); Ctr. Art Galleries-Haw., Inc. v. United States, 875 F.2d 747, 750 (9th Cir.1989) (where “the government had the means to identify accounts which may have involved [allegedly fraudulent Salvador] Dali artwork,” a warrant authorizing agents to seize accounts of other artists was invalid), superseded by statute on other groimds as stated in J.B. Manning Corp. v. United States, 86 F.3d 926, 927 (9th Cir.1996).
In this case, the deputies had a precise description of the firearm used by Bowen in connection with his assault. Kelly, the eyewitness and victim of the assault, described the firearm as a “black sawed off shotgun with a pistol grip” and even provided the deputies with a photo of Bowen posing with the gun. Because the government knew “ ‘exactly what it needed and wanted,’ ” this third consideration also cuts against the validity of the warrant. United States v. Cardwell, 680 F.2d 75, 78 (9th Cir.1982) (quoting VonderAhe, 508 F.2d at 370); see Spilotro, 800 F.2d at 963.
The deputies argue that the broad scope of the warrant was necessary in light of the specific circumstances of the crime. They note that a sawed-off shotgun can be broken down into separate pieces for easier concealment and that the deputies had probable cause to believe that a search for the disassembled parts of the sawed-off shotgun would be necessary. But this reasoning does not preclude a more precise description of the items subject to seizure. Under the specific circumstances of the crime, the deputies’ probable cause extended only to firearm components that could be part of a disassembled sawed-off shotgun with a pistol grip; there was no probable cause to search for disassembled pieces of all firearms described in the warrant. See Spilotro, 800 F.2d at 965.
The deputies also argue that it was necessary to draft the firearm description broadly because Kelly could have been mistaken in her description of the gun. This argument has little force in this situation, because Kelly provided the officers with a picture of the weapon. The warrant did not omit details that Kelly might have mistaken or that might not have been accurately reflected in the photo, such as the color or specific make of the weapon. Rather, Messerschmidt failed to include any limitation that would have helped focus the warrant on the specific type of gun legitimately subject to the search. Thus, the deputies’ argument, if availing, would impermissibly allow police to “enlarge a specific authorization, furnished by a warrant ... into the equivalent of a general warrant to rummage and seize at will.” Minnesota v. Dickerson, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (internal quotation marks omitted).
In short, the deputies had probable cause to search for a single, identified weapon, whether assembled or disassembled. They had no probable cause to search for the broad class of firearms and firearm-related materials described in the warrant. Although we have upheld warrants describing broad classes of items in certain cases, see Storage Spaces, 111 F.2d at 1370; Hillyard, 677 F.2d at 1340, the rationales adopted in those cases are inapplicable here given the information the deputies possessed.
*1028 The deputies raise several additional arguments to justify the breadth of the warrant. These arguments, however, are unrelated to the constitutional requirement that a search warrant not issue except upon probable cause for every item described in the warrant. See In re Grand Jury Subpoenas, 926 F.2d at 857.
First, the deputies argue that it was reasonable for the warrant to authorize a broad search for firearms and firearm-related materials because Bowen is a violent and dangerous person. The deputies draw attention to facts in the affidavit showing that Bowen was suspected of assault with a deadly weapon, was a gang member, and that night service was requested to protect the public. The deputies also rely on research not set forth in the affidavit which indicated that Bowen had a history of violence and several prior felony convictions. The dissent makes similar arguments, see Dissent at 12742-44, n.l & n.6, and also contends that probable cause existed because firearms are inherently dangerous, Dissent at 12743-44.[4]
There is no doubt that deputies have a valid interest in protecting themselves and the public from potentially violent and dangerous suspects. Indeed, the Supreme Court has recognized that courts must give “some latitude” to “officers in the dangerous and difficult process of making arrests and executing search warrants,” Maryland v. Garrison, 480 U.S. 79, 87, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In this vein, the Court’s “search incident to arrest” doctrine allows a police officer to take into account the inherent hazards raised by an arrestee’s potential access to firearms, see Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But there is no “dangerousness” exception to the Fourth Amendment’s probable cause requirement, regardless of whether a search involves violent suspects or deadly weapons. A police officer’s valid safety concerns do not create a “fair probability” that a broad class of weapons may be found in a suspect’s residence or that such items are contraband or evidence of a crime. See Grubbs, 547 U.S. at 95, 126 S.Ct. 1494. The deputies cite no case, and we have found none, holding that a warrant’s over-breadth could be cured simply because of potential danger to police officers at some point in the future. Indeed, such a rule would permit officers to transform every warrant into a “general, exploratory search[ ]” allowing “indiscriminate rummaging through a person’s belongings.” Spilotro, 800 F.2d at 963; see also Groh, 540 U.S. at 561, 124 S.Ct. 1284; Coolidge, 403 U.S. at 467, 91 S.Ct. 2022 (plurality opinion). Nor is there a per se rule that police have probable cause to search the residences of ex-felons for firearms and firearm-related items. See United States v. Santos, 403 F.3d 1120, 1132 (10th Cir. 2005) (holding that a prior criminal history, without more, is insufficient to establish reasonable suspicion); United States v. Herron, 215 F.3d 812, 814 (8th Cir.2000) (holding that evidence of prior marijuana convictions is insufficient to create probable cause to search the defendant’s residence).[5]
*1029 Here the record is devoid of evidence that Bowen possessed guns other than the sawed-off shotgun identified by Kelly or that the broad range of firearms covered by the warrant would be present in the Millenders’ residence. Therefore, regardless of Bowen’s history or the inherent dangerousness of firearms, the police lacked probable cause to apply for a search warrant for a broad range of firearms.[6]
In any event, because Messerschmidt did not inform the magistrate of Bowen’s prior felonies, his criminal history is not relevant to our analysis here. It is well established that, in reviewing a search warrant, we are “limited to the information and circumstances contained within the four corners of the underlying affidavit.” Crowe v. County of San Diego, 593 F.3d 841, 869 (9th Cir.2010) (internal quotation marks omitted); see also United States v. Gourde, 440 F.3d 1065, 1067 (9th Cir.2006) (en banc). Probable cause is a determination made by the issuing magistrate based on the facts presented to him, not a determination made by an officer based on information known only to himself. See Gates, 462 U.S. at 238-39, 103 S.Ct. 2317. Therefore, the dissent errs in suggesting that Messerschmidt’s personal knowledge that Bowen was a felon is sufficient to create probable cause. Dissent at 1036 & n.l.[7]
Second, the deputies argue they were justified in seeking all firearms and firearm-related materials because such materials could aid in the prosecution of Bowen. Again, this argument is unrelated to the constitutional requirement that there be probable cause for each item described in the warrant. Although the deputies likely had probable cause to search *1030 for a limited range of firearm-related material that would have provided circumstantial evidence of ownership of the sawed-off shotgun at issue, such as receipts or compatible ammunition, the warrant extended beyond such evidence to “[a]ny firearm capable of firing or chambered to fire any caliber ammunition.” Put simply, the Fourth Amendment does not authorize the issuance of warrants to conduct fishing expeditions to find evidence that could assist officers in prosecuting suspects. See Garrison, 480 U.S. at 84,107 S.Ct. 1013.
The deputies further argue that any caliber of shotgun or receipts would show the possession and purchase of guns. But we fail to see how this gives the deputies probable cause, because the possession and purchase of guns by itself does not constitute contraband or evidence of a crime. See Gates, 462 U.S. at 238, 103 S.Ct. 2317. As discussed above, the warrant did not include the information about Bowen’s criminal record that could make his possession and purchase of guns a criminal offense, and thus such information cannot be considered in our analysis. See Crowe, 593 F.3d at 869. Moreover, while the district court concluded that the deputies had probable cause to search for “[a]rticles of personal property tending to establish the identity of the person or persons in control of the premise or premises,” a ruling the Millenders do not challenge on appeal, the deputies do not argue that such probable cause justified their search for the broad range of firearms listed in the warrant. Nor could they. While we have upheld warrants authorizing searches for “[i]ndieia tending to establish the identity of persons in control of the premises,” Ewing v. City of Stockton, 588 F.3d 1218, 1229 (9th Cir.2009), the probable cause to search for such “indicia of control” usually refers to such items as “utility company receipts, rent receipts, cancelled mail envelopes, and keys,” United States v. Honore, 450 F.2d 31, 33 (9th Cir.1971), not to the full range of firearm and firearm-related materials sought here. See United States v. Whitten, 706 F.2d 1000, 1009 (9th Cir.1983) (upholding a warrant authorizing the seizure of a broad range of documents only to the extent the documents indicated “the ownership or occupancy” of a residence, and noting that without such a limitation the warrant’s broad authorization “might have been unreasonable”), abrogated on other grounds by United States v. Perez, 116 F.3d 840, 844-46 (9th Cir.1997) (en banc); cf. United States v. Rettig, 589 F.2d 418, 420-21, 423 (9th Cir.1978) (invalidating a warrant allowing a search for indicia of the identity of the residents of a house when government agents used it as a pretext to search for evidence of a cocaine smuggling conspiracy).
Although we are deferential to a magistrate’s determination of probable cause and consider the language of a warrant and affidavit in a common sense and practical manner, Gates, 462 U.S. at 236, 103 S.Ct. 2317, here we are unable to identify any basis, let alone a “substantial basis,” see Leon, 468 U.S. at 915, 104 S.Ct. 3405, for probable cause to search and seize the broad category of firearm and firearm-related materials set forth in the warrant. Accordingly, we find ourselves in that rare situation where we must conclude that the magistrate lacked a substantial basis for issuing the warrant for this broad range of items.
C
We next consider the search warrant’s authorization to search for all gang-related items. The affidavit contains two references to Bowen’s alleged gang membership. It states that Bowen is “a known Mona Park Crip gang member,” and it asserts, in the section justifying a *1031 request for night service, that Bowen “has gang ties to the Mona Park Crip gang based on information provided by the victim and the cal-gang data base.” Neither of these assertions provides probable cause for a magistrate to conclude that “contraband or evidence of a crime,” Gates, 462 U.S. at 238, 103 S.Ct. 2317, would be found at Mrs. Millender’s residence. Merely being a gang member or having gang ties is not a crime in California. People v. Gardeley, 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713, 725 (1996). The relevant California law “imposes increased criminal penalties” for gang membership only when the underlying criminal act is “ ‘for the benefit of, at the direction of, or in association with’ a group that meets the specific statutory conditions of a ‘criminal street gang,”’ and when the act is done with the “ ‘specific intent to promote, further, or assist in any criminal conduct by gang members.’” Id. (quoting CaLPenal Code § 186.22(b)(1)). Here, Messerschmidt himself stated he had no reason to believe that Bowen’s assault on Kelly was related to gangs, and there is no evidence in the affidavit (or the record) to suggest otherwise. Because the deputies failed to establish any link between gang-related materials and a crime, the warrant authorizing the search and seizure of all gang-related evidence is likewise invalid.
IY
Our conclusion that there was no probable cause for the broad categories of firearm- and gang-related items listed in the search warrant, and that the search warrant violated the Millenders’ constitutional rights, is only the first step in our analysis of whether the deputies are entitled to qualified immunity. We must next consider whether the Millenders’ constitutional rights were “clearly established” at the time of the deputies’ alleged misconduct. Pearson, 129 S.Ct. at 816.
A
The Supreme Court has refined the application of the qualified immunity test in the Fourth Amendment context. See Malley, 475 U.S. at 344-46, 106 S.Ct. 1092; Groh, 540 U.S. at 563-65, 124 S.Ct. 1284. In private actions against officers who have executed constitutionally inadequate warrants, the Supreme Court has held that an officer loses qualified immunity only when “a reasonably well-trained officer in [the defendant officer’s] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.” Malley, 475 U.S. at 345, 106 S.Ct. 1092. This standard “provides ample protection to all but the plainly incompetent or those who knowingly violate the law.” Id. at 341, 106 S.Ct. 1092.
Despite this protection, the Supreme Court has preserved the right of individuals to seek relief in certain narrowly defined circumstances. Malley and Groh, the two leading Supreme Court cases in this context, deal with facts and arguments similar to the case before us. In Malley, plaintiffs sued a state trooper under § 1983 for applying for an arrest warrant that failed to establish probable cause. Id. at 337, 106 S.Ct. 1092.[8] Rather than granting the officer absolute immunity, Malley held that officers should receive only qualified immunity because “it would be incongruous to test police behavior by the ‘objective reasonableness’ standard in a suppression hearing, United States v. Leon, 468 U.S. 897 (1984), while exempting police conduct in applying for an arrest or *1032 search warrant from any scrutiny whatsoever in a § 1983 damages action.” Malley, 475 U.S. at 344, 106 S.Ct. 1092. Accordingly, Malley held that officers would be entitled to qualified immunity in § 1983 actions only under the same facts that would allow the government to claim a good faith exception to the exclusionary rule in a suppression hearing. Said otherwise, officers lose immunity only “where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” Id. at 344-45, 106 S.Ct. 1092 (citing Leon, 468 U.S. at 923,104 S.Ct. 3405).
Malley rejected the argument that the trooper was “shielded from damages liability because the act of applying for a warrant is per se objectively reasonable” and that he was “entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant.” Id. at 345, 106 S.Ct. 1092. According to Malley, that view of objective reasonableness was “at odds” with cases such as Leon and Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Malley, 475 U.S. at 345, 106 S.Ct. 1092. Rather, the pertinent question must be “whether a reasonably well-trained officer in [the defendant officer’s] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.” Id. If a reasonable officer would have known that the affidavit was fatally deficient, then the defendant’s “application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest [or search].” Id. Malley declined to hold that an officer could rely on the determination of the magistrate, stating that “it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should” and, accordingly, it was “reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.” Id. at 345-46,106 S.Ct. 1092.
Groh offers an example of one of the rare cases described in Malley when a warrant is “so lacking in indicia of probable cause as to render official belief in its existence unreasonable,” 475 U.S. at 345, 106 S.Ct. 1092, notwithstanding the approval of a magistrate. In Groh, the plaintiff claimed his Fourth Amendment rights had been violated because the warrant authorizing the search and seizure of his property was invalid. 540 U.S. at 554-55, 124 S.Ct. 1284. Although the defendant officer had prepared a detailed application for the warrant, the warrant itself included only a description of the plaintiffs residence, and it did not incorporate the application by reference. Id. Groh held that the warrant “was plainly invalid” because it totally failed to describe the things to be seized, let alone with particularity. Id. at 557, 124 S.Ct. 1284. Accordingly, the Court concluded that the search conducted pursuant to the warrant was unconstitutional. Id. at 563, 124 S.Ct. 1284. Rejecting the officer’s assertion of qualified immunity, Groh reasoned that “just a simple glance[ Jwould have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal.” Id. at 564, 124 S.Ct. 1284. Further, the Court held that the officer “may not argue that he reasonably relied on the Magistrate’s assurance that the warrant contained an adequate description of the things to be seized and was therefore valid” because the officer himself prepared the invalid warrant. Id.
Accordingly, as Malley and Groh make clear, a plaintiff can proceed with a § 1983 action stemming from an officer’s application for an invalid warrant in those limited situations when “a reasonably well-trained officer” in the defendant’s situation would have known that the warrant did not establish probable cause. *1033 Malley, 475 U.S. at 345, 106 S.Ct. 1092; see Groh, 540 U.S. at 564, 124 S.Ct. 1284. When the warrant is so lacking in indicia of probable cause, officers cannot claim that they acted reasonably by seeking a warrant merely because a neutral magistrate approved the application; rather, officers must exercise their own “reasonable professional judgment.” Malley, 475 U.S. at 346, 106 S.Ct. 1092.
In interpreting these precedents, we have emphasized the “distinction between warrants with disputable probable cause and warrants so lacking in probable cause that no reasonable officer would view them as valid.” KRL, 512 F.3d at 1190; see also United States v. Shi, 525 F.3d 709, 731 (9th Cir.) (“Good faith reliance exists if the agents’ affidavit establishes ‘at least a colorable argument’ for probable cause, and the agents relied on the search warrant in an objectively reasonable manner.” (quoting United States v. Luong, 470 F.3d 898, 903 (9th Cir.2006))), cert. denied, — U.S. -, 129 S.Ct. 324, 172 L.Ed.2d 234 (2008). Where the “lack of probable cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid,” we have held that “[ajpproval by an attorney and a magistrate did not justify reasonable reliance.” KRL, 512 F.3d at 1192 (citing Kow, 58 F.3d at 428-29).
B
While the deputies claim that “a reasonably well-trained officer” in their position would not have known that the search warrant failed to establish probable cause, Malley, 475 U.S. at 345, 106 S.Ct. 1092, they add little to their prior arguments. The deputies argue that they could have reasonably but mistakenly concluded that they had probable cause to seize the weapon found at the Millender residence because “they would not know if the suspect would be coming back and the officers would not want the suspect to gain access to more weapons and hurt other people, including the victim in this case.” To the extent, this argument differs from their “dangerousness” argument, see supra at pp. 12729-30, it also fails. Although officers may make a warrantless entry into a residence under certain exigent circumstances, such as when “they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury,” see Brigham City v. Stuart, 547 U.S. 398, 400, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), the exigent circumstances doctrine is an exception to the warrant requirement, id. at 403, 126 S.Ct. 1943, not an authorization for the deputies to apply for a warrant that is not supported by probable cause. The deputies also assert they could have been reasonably mistaken as to whether the underlying crime was gang-related. This argument borders on the frivolous, given Messerschmidt’s statement that he had no reason to hold such a belief, and the absence of any evidence that the crime at issue was gang-related.
The deputies’ arguments cannot change the reality that the warrant in this case suffered a “glaring deficiency.” Groh, 540 U.S. at 564, 124 S.Ct. 1284. Neither it nor the affidavit established probable cause that the broad categories of firearms, firearm-related material, and gang-related material described in the warrant were contraband or evidence of a crime. Moreover, a reasonable officer in the deputies’ position would have been well aware of this deficiency. The affidavit indicated exactly what item was evidence of a crime, the black sawed-off shot-gun with a pistol grip, and reasonable officers would know they could not undertake a general, exploratory search for unrelated items unless they had additional probable cause for those items. See SDI Future Health, 568 F.3d at 702-03; In re Grand Jury Subpoenas, 926 F.2d at 857; VonderAhe, 508 F.2d at 369-70. Under these circumstances, we *1034 cannot say that an officer could reasonably but mistakenly believe that the search warrant established “a colorable argument for probable cause.” See Sh% 525 F.3d at 731. Rather, the warrant here was “plainly invalid.” Groh, 540 U.S. at 557, 124 S.Ct. 1284.
Citing the dissenting opinions in Malley and Groh, see Dissent at 1039 n.8, 1038-40 & n.10, 1045-46, the dissent would hold that the officers acted in an objectively reasonable manner as a matter of law because they “reasonably relied” on the review and approval of “their superiors, the district attorney, and the magistrate to correct the alleged over breadth in the search warrant,” Dissent at 1044. Judge Silverman likewise suggests that the deputies are entitled to qualified immunity because they obtained a warrant, consulted with their superiors, and acted in good faith. Silverman Dissent at 1049-50. We cannot accept these propositions, however, because they conflict with the majority opinions in Malley and Groh, which imposed on police officers the independent responsibility to ensure there is at least a colorable argument for probable cause, and rejected the factors suggested by the dissenting justices for giving police officers even further protection from liability. See Groh, 540 U.S. at 563-64, 124 S.Ct. 1284; Malley, 475 U.S. at 345-46, 106 S.Ct. 1092. Nor can we agree that the officers were objectively reasonable in obtaining a search warrant for a broad range of firearms and gang indicia because the suspect was an ex-felon, the firearms were inherently dangerous, and the firearms were specifically described. Dissent at 12759-60. As explained above, under basic Fourth Amendment principles, a search warrant is not supported by probable cause unless the affidavit establishes that the items in the search warrant are contraband or evidence of a crime; neither information known only to the officer, the criminal status of the suspect, nor the dangerousness of the items listed in the warrant establishes probable cause. The dissent’s desire to transform these longstanding rules into a more “workable guideline,” Dissent at 1041, does not excuse the police officers from compliance with the existing rules mandated by the Supreme Court.[9]
The deputies here had a responsibility to exercise their reasonable professional judgment. See Malley, 475 U.S. at 346, 106 S.Ct. 1092. As Malley recognized, “ours is not an ideal system,” and as such in circumstances such as these a neutral magistrate’s approval (and, a fortiori, a non-neutral prosecutor’s, see Coolidge, 403 U.S. at 449-50, 91 S.Ct. 2022) cannot absolve an officer of liability. Malley, 475 U.S. at 345, 106 S.Ct. 1092.[10] Accordingly, the deputies are not entitled to qualified *1035 immunity with respect to the Millenders’ claim that their role in obtaining and executing the warrants violated their constitutional rights.
V
“While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.” Garrison, 480 U.S. at 87, 107 S.Ct. 1013. In the majority of cases, officers who reach a reasonable but mistaken conclusion that a warrant was justified by probable cause will be shielded from suit by qualified immunity. See Malley, 475 U.S. at 341, 106 S.Ct. 1092. “But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.” Brinegar, 338 U.S. at 176, 69 S.Ct. 1302. Where, as here, the warrant was so facially invalid that no reasonable officer could have relied on it, the deputies are not entitled to qualified immunity, and the Millenders can proceed with their § 1983 claim.
AFFIRMED.

. A “Ramey warrant” is a warrant authorizing the arrest of a suspect within the home before the filing of criminal charges by the district attorney. Goodwin v. Superior Court, 90 Cal.App.4th 215, 108 Cal.Rptr.2d 553, 555 (2001) (citing People v. Ramey, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976)).

. Kelly also informed Messerschmidt of Bowen's domestic violence record during their interview.

. See generally Ewing v. California, 538 U.S. 11, 14-17, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).

. We refer to Judge Callahan's dissent as "the dissent” or "Dissent.” We refer to Judge Silverman’s dissent by name.

. We do not reach the question whether the deputies could justify the seizure of Augusta Millender's gun under the plain view doctrine, on the theory that a firearm, if owned by Bowen, could be evidence of a "felon in possession” crime. See 18 U.S.C. § 922(g)(1); Cal.Penal Code § 12021(a)(1). This argument was not raised below, and is not a pure question of law. Cf. Scott v. Ross, 140 F.3d 1275, 1283 (9th Cir.1998) (holding that we have discretion to review issues not raised below when "the issue presented is purely *1029 one of law” and does not require additional factual development (internal quotation marks omitted)). Rather, in order to raise such an argument, the deputies would need to present evidence on critical factual issues such as whether the deputies saw Augusta Millender’s gun "from a place and in circumstances where the viewing officer was entitled to be present,” Spilotro, 800 F.2d at 968, and whether it would be immediately apparent to them that a firearm was contraband or evidence of a crime when Bowen did not have sole dominion or control over the 120th St. address, see Horton v. California, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); United States v. Ruiz, 462 F.3d 1082, 1089 (9th Cir.2006) ("[A]ccess to the premises does not equate to possession.”).

. The dissent raises the further theory that the deputies had probable cause to obtain the search warrant for the Millenders’ residence because they had probable cause to obtain an arrest warrant for Bowen. See Dissent at 12743, 12757-58. But these are distinct tests: an arrest warrant must be based on probable cause that “an offense has been or is being committed,” Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), while a search warrant can issue only on “a fair probability that contraband or evidence of a crime will be found in a particular place,” Grubbs, 547 U.S. at 95, 126 S.Ct. 1494 (internal quotation marks omitted). While a suspect’s violent propensities may create probable cause for an arrest, there is no per se rule that such propensities authorize a general search for a broad range of weapons.

. Nor, contrary to the dissent, could the magistrate properly infer that Bowen had prior felony convictions from the affidavit’s reference to information about Bowen in "the cal-gang data base.” Dissent at 12743 n.l. According to CALGANG’s Advisory Committee, a name may be added to the database based on nothing more than information that a “[s]ubject has been seen frequenting gang areas” and “has been seen affiliating with documented gang members.” Cal. Gang Node Advisory Comm., Policy and Procedures for the CALGANG® System 7 (Sept. 27, 2007), available at http://ag.ca.gov/calgang/pdfs/policy_ procedure.pdf. Indeed, the Advisory Committee warns that the CALGANG database "is not designed to provide users with information upon which official actions may be taken," and "cannot be used to provide probable cause for an arrest or be documented in an affidavit for a search warrant.” Id. at 6.

. Though Malley dealt with an arrest warrant, the opinion applies to both arrest and search warrants. See 475 U.S. at 344, 106 S.Ct. 1092; Marks v. Clarke, 102 F.3d 1012, 1026 & n. 31 (9th Cir. 1997) (applying Malley to search warrants).

. The dissent also suggests that the officers' reliance on the search warrant was objectively reasonable because only two sections of the warrant lacked probable cause, and those sections "do not appear to have been very important either when the warrant was initially sought or later.” Dissent at 1047; see Dissent at 1044-45. In fact, those two sections of the warrant set forth the entire description of the items to be seized, and the district court invalidated all but a single sentence. Supra at p. 1023. Although we have held that the invalid portions of a search warrant may be severed from the valid portions, "severance is not available when the valid portion of the warrant is 'a relatively insignificant part' of an otherwise invalid search.” In re Grand Jury Subpoenas, 926 F.2d at 858 (quoting Spilotro, 800 F.2d at 967). Here, even though the district court upheld a single sentence and even though the description of the items to be searched for and seized comprised only two paragraphs, the officers' reliance on the warrant as a whole was not reasonable.

. Nor is this a case where the warrant was defective because the magistrate made an error, as in Massachusetts v. Sheppard, 468 U.S. 981, 989-90, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), in which the Court declined to sup *1035 press evidence obtained with an improper warrant form where the authorizing magistrate assured the detective that he would make the changes necessary to ensure its validily. Here, Messerschmidt prepared the overbroad warrant himself, and the magistrate gave no assurances that he would fix errors in the warrant.