**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

PETER JOHN KRUPA,
          *Defendant-Appellant.*

No. 09-10396

D.C. No.
1:04-cr-05141-
AWI-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
October 4, 2010—San Francisco, California

Filed February 7, 2011

Before: Marsha S. Berzon and Consuelo M. Callahan,
Circuit Judges, and Charles R. Wolle,
Senior District Judge.*

Opinion by Judge Callahan;
Dissent by Judge Berzon

---

*The Honorable Charles R. Wolle, Senior District Judge for the U.S.
District Court for Southern Iowa, Des Moines, sitting by designation.

**COUNSEL**

Katherine Hart of Fresno, California, for defendant-appellant Peter John Krupa.

Benjamin B. Wagner, United States Attorney, and Brian W. Enos (argued), Assistant United States Attorney, of Fresno, California, for the United States.

**OPINION**

CALLAHAN, Circuit Judge:

Peter Krupa appeals from his conditional guilty plea to receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). Krupa challenges the district court's denial of his motion to suppress evidence seized from computers in his custody. On grounds that differ slightly from those proffered by the district court we affirm the denial of the motion to suppress.

On April 12, 2002, the military police at Edwards Air Force Base received a call from Rhonda Velasco. She was worried because her ten-year-old daughter and five-year-old son, who were living on the base with her ex-husband, Sergeant Velasco, had not arrived at the train station in Lancaster as previously arranged. Accordingly, the military police went to Sgt. Velasco's home. There they encountered Peter Krupa. He indicated that he was taking care of the children while Sgt. Velasco was in the Philippines until April 21, and showed the military police a written note to that effect.

The home was in complete disarray with clothing strewn on the floor and in the hall. Of particular concern were the presence of 13 computer towers and two laptops. The military police asked Krupa for consent to take the computers and he initially agreed.

On Tuesday, April 16, 2002, Investigator Reynolds (who is trained in, and specializes in investigating computers and digital evidence) was assigned to investigate the seized computers. In his initial search of the computers Reynolds located an image of suspected contraband. This photograph appeared to be of a nude 15- to 17-year-old female with a website label of "www.nude-teens.com." On Sunday, April 21, 2002, Reynolds was hospitalized for chest pain. The following day, both Sgt. Velasco and Krupa revoked their consents to the search of the computers.

Reynolds remained hospitalized until April 25, 2002. While in the hospital he sought consent for "military search authority" for the computers. The request was based on the photograph and the fact that consent had been revoked. Reynolds sought "authority to continue this search for any further items of contraband." On April 29, 2002, Colonel LaFave, the appointed Primary Search Authority Military Magistrate, signed the search warrant.[1] Reynolds resumed his forensic analysis of the computers, locating adult pornography and 22 images of child pornography.

Sometime thereafter, the matter was transferred to the Federal Bureau of Investigation ("FBI"). Both parties agree that on May 14, 2002, during a non-custodial interview, an FBI Special Agent showed Krupa the suspected child pornographic images recovered from one of the computers and asked him if he recognized the images. Krupa allegedly stated that he "had probably viewed all the images because he recog-

---

[1]Krupa's appeal does not question the propriety of Colonel LaFave acting as the issuing magistrate.

nized that the structure of the filename printed above the computer images to be the same structure he uses to name computer files on his computers." On the basis of the evidence obtained pursuant to the military search warrant and Krupa's statement, the FBI sought and procured a federal search warrant from Judge Wanger of the Eastern District of California.[2]

Krupa was indicted for violating 18 U.S.C. § 2252(a)(4) — possession of visual depictions of minors engaging in sexually explicit conduct. Krupa moved to suppress the evidence seized from his computer. The district judge found that Krupa had standing to challenge the seizure of the computers and had withdrawn his consent. The district court determined that although the single photograph was insufficient to show probable cause, citing *United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006), the motion to suppress would be denied under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

Krupa then pled guilty to receipt of materials depicting sexual exploitation of minors and entered into a plea agreement which reserved his right to appeal the denial of the motion to suppress. He was sentenced to 41 months of incarceration.

We review *de novo* the district court's denial of a motion to suppress evidence. *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006). We review for clear error a magistrate's finding of probable cause to issue a search warrant, as well as a *Leon* good-faith exception, and give "great deference" to such findings. *Id.*; *see also United States v. Hay*, 231 F.3d 630, 634 n. 4 (9th Cir. 2000).

**[1]** As we noted in *Hill*, our review starts with the Constitution. We stated:

---

[2]It appears that ultimately 52 images and an additional 48 movies of child pornography were located within the computers.

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there. Probable cause means only a "fair probability," not certainty, and requires consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, . . . (1983).

*Hill*, 459 F.3d at 970. In *Gates*, the Supreme Court observed that:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States* [362 U.S. 257, 271 (1960)].

In applying this standard, we have reiterated the Supreme Court's directive that a magistrate's determination of probable cause should be paid great deference by reviewing courts. *See Millender v. County of Los Angeles*, 620 F.3d 1016, 1025 (9th Cir. 2010); *U.S. v. Kelley,* 482 F.3d 1047, 1050 (9th Cir. 2007); *Battershell*, 457 F.3d at 1050.

**[2]** We have further noted that *Gates* signaled a change from a technical approach to probable cause to "a return to the 'totality of the circumstances' test and emphasized that probable cause means 'fair probability, not certainty or even a pre-

ponderance of the evidence.' " *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). In *Kelley*, we explained that "[w]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question,' " for which "[n]either certainty nor a preponderance of the evidence is required." 482 F.3d at 1050 (quoting *Gates,* 462 U.S. at 246, and *Gourde*, 440 F.3d at 1069).

**[3]** Although this is a close case, we conclude that Colonel LaFave could reasonably conclude that there was probable cause to issue a search warrant. The district court reasonably thought that pursuant to *Battershell*, the single picture of a nude teenage girl was not sufficient in itself to support a search warrant. Here, however, the picture must be placed in the context of the exigent unusual circumstances. Military police, responding to a call from a distressed mother, went to a home on the military base assigned to Sgt. Velasco. They found that Sgt. Velasco was not at home, was not even in the country, and was not expected to return for another nine days. His minor children were living in what Krupa's brief describes as "complete disarray," under the purported supervision of Krupa, who was a civilian with no apparent connection to the armed forces. Moreover, Krupa had control over the 13 computer towers and two laptops that were in the home. The military police found this concentration of computers in such a surrounding to be suspicious and sought to take the computers. Krupa consented to the police taking the computers. Reynolds was then assigned to investigate whether the computers were being used for criminal purposes. His initial investigation revealed a picture of a nude teenager, which he believed was evidence of child pornography. But before he could confirm that the computers were being used to store child pornography, or possibly used for other criminal activity, Reynolds' investigation was interrupted by his health problems.

**[4]** Thus, when Reynolds sought to continue his ongoing investigation, Krupa's intervening revocation of his consent to

the search of the computers required that Reynolds obtain a warrant to continue his investigation. At that point in time the picture of a nude teenager, with its tag "www.nude-teens.com," was strong supporting evidence that the fifteen computers found in a home in disarray on a military base were being used for criminal purposes. Moreover, a ten-year-old girl and a five-year-old boy were living in the disheveled residence. Accordingly, Colonel LaFave could reasonably conclude that was probable cause to support the issuance of the search warrant.

[5] Our opinion in *Battershell*, does not compel a contrary perspective. There, we held that a single photograph of a young girl between 8 and 10 standing nude in a bath tub is insufficient to establish probable cause. 457 F.3d at 1051. However, we went on to hold that a second picture and the totality of the circumstances did establish probable cause and we affirmed the denial of the motion to suppress. *Id*. at 1054. In *Battershell*, other than the two photographs extracted from Battershell's computer, there was no reason for the authorities to suspect any criminal activity. Similarly, in *Hill*, but for a computer technician's discovery of what she believed to be child pornography on the defendant's computer, 459 F.3d at 968, there was no indication of criminal activity.[3] In contrast, here, the presence of fifteen computers under the control of a civilian with no apparent ties to the military in a home of a sergeant (who was out of the country) on a military base in which two minor children resided and which was in "com-

---

[3]The difficulty inherent in determining whether a photograph of a minor is a "lascivious exhibition of the genitals or pubic area" as proscribed by 18 U.S.C. § 2256(2)(A)(v), the issue in *Battershell*, is illustrated by the subsequent opinion in *Hill,* 459 F.3d 966. In *Hill*, we determined that a state judge finding of probable cause was "well within his discretion," even though the description of the photographs (on which the judge issued the warrant ) was not very different from the description of the first photograph in *Battershell*. *See Hill*, 459 F.3d at 968-69, 972. Moreover, *Battershell* and *Hill* were decided well after Colonel LaFave issued the search warrant in this case and thus were not available to guide his decision.

plete disarray" is unquestionably suspicious. Thus, in this context, even if the picture by itself was insufficient to establish probable cause, when supplemented with its tag "www.nude-teens.com," and the fact that Reynolds had only started his investigation of the 15 computers, we cannot say that Colonel LaFave could not reasonably conclude that there was "a fair probability that contraband or evidence of a crime" would be found on the computers.

In addition, although not addressed by the parties, we note that the search took place on a military base and that our case law at least suggests that civilians such as Krupa impliedly consent to searches when they enter a military base. *See Morgan v. United States*, 323 F.3d 776, 778 (9th Cir. 2003) (holding that a warrantless search of a person seeking to enter Edwards Air Force Base may be deemed reasonable based on the implied consent of the person searched).

In sum, giving the appropriate deference to Colonel LaFave's determination as required by *Gates*, 462 U.S. 213, and our own precedent, we conclude that he could have reasonably determined that there was probable cause to support the issuance of the search warrant. Accordingly, the district court's denial of Krupa's motion to suppress is **AFFIRMED**.[4]

---

BERZON, Circuit Judge, dissenting:

The majority seems to imagine "probable cause" as a cloud that follows certain people around, created by their idiosyncratic habits and irresponsible friends, and persisting even though the individuals are not suspected of any particular

---

[4]Because we determine that Colonel LaFave could have reasonably concluded that there was probable cause to issue the search warrant, we need not, and do not, consider the district court's invocation of the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

crime. This "probable cause" cloud, the majority imagines, is available for invocation by law enforcement to justify virtually any search. But, as the case law makes clear, probable cause does not exist in the air. And probable cause to think that someone is odd or a slob or that his friend is a negligent father does not justify seizing and searching his computers.

Instead, to justify a Fourth Amendment search, there must be probable cause to think that "contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In a case, such as this one, where the items to be seized — images on a computer — could be, and usually are, innocuous in nature, an affidavit in support of a search warrant must establish a "fair probability" that the images actually *are* contraband or evidence of a crime. *Id.* Here, "the more precise question we must answer is whether the officer's affidavit established probable cause that the images on the defendant's computer were — as described — lascivious." *United States v. Hill*, 459 F.3d 966, 970-71 (9th Cir. 2006); *cf. Millender v. County of Los Angeles*, 620 F.3d 1016, 1030 (9th Cir. 2010) (en banc) (holding that probable cause to believe that guns are present in a location does not establish probable cause to search, as "the possession and purchase of guns by itself does not constitute contraband or evidence of a crime.").

Because the majority loses sight of these fundamental precepts, I respectfully dissent.

## I.

Although the majority stresses that we are to give "great deference" to a magistrate's probable cause finding, Maj. op. at 2264 (quoting *Hill*, 459 F.3d at 970), deference has never meant abdicating our role to ensure that the Fourth Amendment is respected. As explained in *Gates*, this deference is meant to account for "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," lest police

conclude that warrants are simply not worth the trouble and "resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search." 462 U.S. at 236. Accordingly, *Gates* instructs us to interpret affidavits in a "commonsense," rather than "hypertechnical" manner, *id.*, resolving "doubtful or marginal cases" in favor of upholding the warrant's validity, *id.* at 237 n.10 (citation omitted); *see also Millender*, 620 F.3d at 1030 ("[W]e are deferential to a magistrate's determination of probable cause and consider the language of a warrant and affidavit in a common sense and practical manner.").

Nonetheless, *Gates* was clear that we "must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that the magistrate's issuance of the warrant was not "a mere ratification of the bare conclusions of others." 462 U.S. at 239. In practice, applying the requisite deference means that we look to see whether there was "a 'substantial basis' for probable cause to search." *Millender*, 620 F.3d at 1030 (quoting *United States v. Leon*, 468 U.S. 897, 915 (1984)).

This is not a "doubtful or marginal case[ ]." *Gates*, 462 U.S. at 237 n.10. The affidavit supporting the search warrant for Krupa's computers was indubitably inadequate to provide probable cause. As the district court noted, there was but a single fact arguably supporting probable cause: the discovery of a photograph that "appeared to be of 15 to 17 year old female with a web site label of *www.nude-teens.com.*"

## II.

Before turning to that single fact, I note that the majority maintains that the following additional facts also supported probable cause: that Sgt. Velasco was out of the country and had left his two children in the care of Krupa, who was a civilian; that the home was "complete disarray"; and the pres-

ence of 15 computers.[1] Maj. op. at 2266. I agree with the district court that none of these additional factors have any pertinence at all to whether the warrant was issued with probable cause to believe that Krupa possessed child pornography.

First, the living conditions of the residence, however deplorable, were not mentioned in the affidavit for the military search warrant. Similarly, the affidavit makes no mention of Sgt. Velasco's whereabouts; it states only that when an officer visited the residence, "there were no custodial parents at the house[,] only [Krupa,] who was not affiliated with the military." So, even if these facts were at all probative of possession of child pornography — which they are not — they cannot validate the issuance of the warrant. "[I]n reviewing a search warrant, we are 'limited to the information and circumstances contained within the four corners of the underlying affidavit.' " *Millender*, 620 F.3d at 1029 (quoting *Crowe v. County of San Diego*, 593 F.3d 841, 869 (9th Cir. 2010)).

As to the facts that were mentioned in the affidavit, we must consider, of course, "the totality of the circumstances" in assessing probable cause. *United States v. Hay*, 231 F.3d 630, 634 n. 4 (9th Cir. 2000) (quoting *Gates*, 462 U.S. at 238). But a particular fact is only *relevant* to this inquiry insofar as its existence makes it more likely that the suspect is engaged in the criminal activity suspected. *See, e.g.*, *Millender*, 620 F.3d at 1030; *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1446-47 (9th Cir. 1994). Neither the government nor the majority explains how the fact that Krupa was a civilian living on a military base makes it more likely that there was

---

[1]The government suggests as well that the "defendant's first providing consent to review his many computers and then revoking this consent" supported probable cause. The affidavit supporting the warrant application also recited this fact as supporting probable cause. But "refusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." *United States v. Prescott*, 581 F.2d 1343, 1351-52 (9th Cir. 1978); *see also Gasho v. United States*, 39 F.3d 1420, 1438-39 (9th Cir. 1994) (same).

child pornography on his computers, and I certainly see no connection. This fact is just useless trivia.

The same is true with regard to the fact that there were 15 computers in the home. Neither the majority nor the government has explained how this fact makes it one whit more likely that Krupa had child pornography. There is not even the bare assertion that, for example, having that many computers, which Krupa apparently refurbished and resold, fits a "profile" of a collector of child pornography, such as the one discussed in *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc). The government asserts that the computer collection is "suspicious[ ]," but does not endeavor to explain why, or how this "suspicion" is at all related to the conclusion that the computers had child pornography (or any other contraband) on their hard drives. As we recently had occasion to note, "even inexpensive electronic storage media today can store the equivalent of millions of pages of information." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc). So it is certainly not common knowledge that having multiple computers instead of one makes collecting even very large amounts of child pornography any more likely; a person so inclined can download reams of child pornography on a single computer with an internet connection. *See id.*[2]

---

[2]The majority's invocation of *Morgan v. United States*, 323 F.3d 776, 778 (9th Cir. 2003) to suggest that "civilians such as Krupa impliedly consent to searches when they enter a military base," Maj. op. at 2268, fails badly. There is a very good reason why this argument was, as the majority notes, "not addressed by the parties," *id.*: it is undisputed that Krupa did *not* consent. In fact, Krupa expressly *revoked* his consent to Reynolds searching his computers. *See* Maj. op. at 2263 ("[B]oth Sgt. Velasco and Krupa revoked their consents to the search of the computers."). Thus, to make any sense at all, the majority's suggestion that Krupa impliedly consented to the search of his computers (even after he had revoked his express consent) must encompass the notion that this implied consent was *irrevocable*. The majority provides nothing to support this radical suggestion.

### III.

That leaves just the photograph, which was not included with the affidavit in support of the search warrant. The photo was described only as "appear[ing] to be of 15 to 17 year old female."

*United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006) dictates that this bare description cannot possibly provide probable cause. As *Battershell* relates:

> Federal law defines five categories of "sexually explicit conduct" with respect to child pornography. The first four categories deal with specific conduct that is easy to identify and describe: "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; [and] (iv) sadistic or masochistic abuse . . . . The fifth category . . . is the "lascivious exhibition of the genitals or pubic area of any person."

*Id.* at 1051 (quoting 18 U.S.C. § 2256(2)(A)).[3] The affidavit in this case makes no mention of any particular conduct, so the photograph found on Krupa's computer can only have fallen into the fifth category.

The affidavit stated only that the female appeared to be 15

---

Moreover, *Morgan* concerns only an implied consent to a search of the person on initial entry onto a military base. *Morgan* does not suggest, nor does any other case of which I am aware, that implied consent carries over as long as the civilian is on the base (or here, even after he has left the base) and is transferred to his far-out-of-reach possessions as well as his person.

[3]Cal. Penal Code § 311.3, also recited by the affidavit, is identical in all material respects.

to 17 and was nude. It said nothing about what parts of her body were depicted, much less that they were exhibited lasciviously — that is, "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Hill*, 459 F.3d at 972 (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)). And of course, "not all images of nude children are pornographic." *Id.* at 970; *see also id.* ("For example, 'a family snapshot of a nude child bathing presumably would not' be criminal." (citation omitted)). Indeed, "the law recognizes that some images of nudity may merit First Amendment protection because they serve artistic or other purposes, and possessing those images cannot be criminal." *Id.* The affidavit supporting the search warrant said absolutely nothing from which one could conclude that this image was child pornography, rather than art. For all we know from this description, the photograph was taken by a latter-day Renoir, intent on portraying from the back a young woman bathing.

The upshot is that here, as in *Battershell*, the affidavit's

> terse description, absent an accompanying photograph, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because [its] conclusory statement is an inherently subjective analysis and it is unclear if the photograph exhibited the young female's genitals or pubic area.

*Battershell*, 457 F.3d 1051.

In one respect, the affidavit here is even *more* deficient than that in *Battershell*, which involved a young female estimated at 8 to 10 years of age. *Id.* The subject of the photograph here, by contrast, appeared to be 15 to 17 years old. Had that estimate been low by just a year, this photograph would not have been illegal child pornography, but rather,

perfectly legal adult pornography, injecting an additional factor of uncertainty absent in *Battershell.*

That the photograph had "a web site label" of www.nude-teens.com adds nothing to the probable cause analysis, at least absent *some* effort — apparently not undertaken here, despite ample opportunity to do so — to ascertain whether that website actually provides *pornographic* photographs of *underage* teenage girls. The website name itself does not indicate that some, much less most or all, of the photographs on it were pornographic, nor is there any other evidence so indicating. By way of contrast, in *Gourde,* the search warrant affidavit contained "unequivocal" evidence that a particular website (of which the defendant was a paid subscriber) "was a child pornography site whose primary content was in the form of images." 440 F.3d at 1070. Not only did the owner admit as much, *see id.*, but a government agent also extensively explored the website, *see id.* at 1067. Here, in contrast, the *only* thing we know is that the photograph had a uniform resource locator (URL) "label" of "www.nude-teens.com."

In sum, the only conclusion consistent with *Battershell* is that the affidavit did not provide probable cause for the search warrant.

## IV.

As to the *Leon* holding of the district court, it won't wash either. As already described, there is simply no question that the warrant here was issued on precisely the sort of impermissibly "bare bones" affidavit of which *Gates* warned, *see Gates,* 462 U.S. at 239, and no reasonable officer would have thought that it provided probable cause. *See Leon,* 468 U.S. at 899 ("[A]n officer [does not] manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."); *United States v. Weber,* 923 F.2d 1338, 1346 (9th Cir. 1990) (same).

I note that the government has not argued that this was a situation requiring quick decisionmaking or a hastily-drafted affidavit. For good reason. Although Reynolds' illness obviously complicated matters, that fact, even coupled with the revocation of consent, did not create the risk that Krupa would destroy incriminating evidence, as the computers were in the government's possession.

Nonetheless, the majority suggests that there were "exigent" circumstances. Maj. op. at 2266. That is simply untrue. As the majority relates, the computers were seized on April 12. From that point on, the computers were in the possession of the government, the children were safely in the custody of their mother, and Krupa was told that he was not permitted to stay in Sgt. Velasco's residence. Thus, if there was any exigency, it had long since dissipated when Reynolds obtained the search warrant some two weeks after the computers were seized. So, the majority's suggestion notwithstanding, "there was no need for the 'hurried judgment' upon which law enforcement decisions must often be based," *Weber*, 923 F.2d at 1346 (citation omitted), and, as in *Weber*, "[a]lthough we need not question the subjective good faith of the government, it acted entirely unreasonably in preparing the affidavit it presented." *Id.*

## Conclusion

For the foregoing reasons, I would hold that the affidavit did not provide probable cause to search Krupa's computers, reverse the district court's application of *Leon*'s good-faith exception, and remand for consideration of whether, after excising the suppressed evidence from the affidavit supporting the second search warrant, probable cause remained for the issuance of the second search warrant.

I cannot help but think that had this case involved anything but child pornography, it would come out differently. I fear that understandable abhorrence of this particular crime can

infect judicial judgment. We would do well to remember that the protections of the Fourth Amendment do not depend on the nature of the suspected criminal activity, any more than they do on the race or gender of the suspect. And that is particularly so where the issue is the searching of personal computers, on which more and more extremely sensitive information is stored. *See Comprehensive Drug Testing*, 621 F.3d at 1176-77.

I respectfully dissent.