Dissent by Judge MURGUIA
OPINION
TASHIMA, Circuit Judge:
Charles Perkins appeals his conviction for receipt of child pornography. Perkins entered a conditional guilty plea, reserving the right to appeal the district court’s denial of his motion to suppress evidence obtained from his home computers pursuant to a search warrant. The district court denied the motion, concluding that the investigating agent did not deliberately or recklessly mislead the magistrate judge by omitting material information from the warrant application. The court also found that there was probable cause to justify the search. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.
I.
A. The Canadian Investigation
On December 29, 2012, Charles Perkins, a then-52-year-old citizen of the United States, was traveling through Toronto International Airport on his way home to Washington State after taking a trip to Chile with his wife and mother-in-law. Canadian Border Services Agency (“CBSA”) officers stopped Perkins after learning that he was a registered sex offender. *1113 Perkins had a 1987 first-degree incest conviction and a 1990 first-degree child molestation conviction. A CBSA officer searched the laptop that Perkins was carrying and, in a folder labeled “cperk,” found two images that he believed to be child pornography. A Peel Regional Police (“PRP”) officer also reviewed the images and, based on his review, arrested Perkins for possession of child pornography. CBSA authorities seized the laptop, along with a digital camera and a memory card.
The next day, Constable Andrew Ullock, a PRP officer specializing in the investigation of child exploitation crimes, interviewed Perkins. Perkins stated that the laptop belonged to his wife and that his computers were at his home in Washington. Perkins’ wife, T.W., confirmed that she mostly used the laptop, but that Perkins occasionally used it. Constable Ullock examined Perkins’ luggage and additionally seized a digital memory card, a memory stick, and a cellular phone. Pursuant to a Canadian search warrant, Constable Ul-lock searched the laptop and found the two images that the CBSA officer had originally discovered. Constable Ullock did not find any other suspected contraband in the laptop or in any of the other digital devices.
After reviewing the images, Constable Ullock concluded that they did not constitute child pornography under Canadian law. In his report of the investigation, he describes the two images as follows:
Image 1: Filename 997.jpg
[[Image here]]
Description: This is a Caucasian female that I would estimate to be between the ages of 13 to 15 years of age. The image shows her only from the mid torso up, including her face. The girl appears to be nude and her breasts are clearly visible.... In spite of the fact that this girl is under the age of 18, her breasts are not the dominant feature of the image, and there is no obvious sexual purpose to the image. Therefore this image does not meet the Canadian Criminal Code definition of child pornography.
Image 2: Filename 989.jpg
[[Image here]]
Description: This is an image of a Caucasian female that I would estimate to be between the ages of 13 to 14 years of age. This girl is sitting and appears to be taking a picture of herself by holding out a camera with her right arm slightly above her head looking down on her.... This girl is completely nude and towards the bottom of the picture a small portion of her vagina can be seen.... However in this photo the view of the girls’ [sic] vagina makes it a minor aspect of the photo, and her hair drapes over much of her breasts, which decrease^] their prominence. Again there is no clear and obvious sexual purpose to the picture, which means it does not meet the Criminal Code of Canada definition of child pornography.
Based on Constable Ullock’s recommendation, the charge against Perkins was dropped on January 10, 2013.
B. The American Investigation
The case was forwarded to Special Agent Tim Ensley of the United States Department of Homeland Security. Agent Ensley received the two images for firsthand review on January 14, 2013. Prior to receiving the images, Agent Ensley drafted an affidavit, based on Constable Ul-lock’s report, in support of a warrant application to search all the digital devices in Perkins’ home in Washington. The affidavit explained that Canadian officers stopped Perkins because of his prior convictions and arrested him after reviewing the images. The affidavit did not state that the charge had been dropped pursuant to *1114 Constable Ullock’s determination that the images were not pornographic.
After reviewing the images for himself, Agent. Ensley included the following descriptions in his affidavit:
Filename 997.jpg
[[Image here]]
Description: This color image depicts a white female (hereinafter referred to as “child victim”) sitting on the edge of what appears to be a bed. The child victim appears to be naked at least from the waist up, and can be seen from mid-abdomen to the top of her head. The child victim’s breasts are clearly visible .... The child victim is young in appearance and appears to be between twelve and fourteen years of age.
Filename 989.jpg
[[Image here]]
Description: This color image depicts a white female (hereinafter referred to as “child victim”) sitting on what appears to be a bed with one arm stretched out taking a picture of herself. The child victim is completely nude and can be seen in the image from her upper thigh area to the top of her forehead. The child victim’s breasts and genital area are clearly visible.... The child victim is young in appearance and appears to be between twelve and fourteen years of age.
Agent Ensley concluded that the second image (hereinafter referred to as the “989.-jpg image”) met the federal definition of child pornography. The warrant application did not include copies of either image. On January 16, 2013, the magistrate issued the warrant.
C. Perkins’ Motion to Suppress and Request for a Franks Hearing
The search pursuant to the warrant revealed several images of child pornography on Perkins’ computers, and he was charged with one count of receipt of child pornography and one count of possession of child pornography. Perkins moved to suppress the evidence, arguing that the warrant lacked probable cause. Alternatively, Perkins argued that Agent Ensley deliberately or recklessly omitted material facts from the affidavit, entitling him to a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court denied the motion in its entirety. On June 6, 2013, Perkins conditionally pleaded guilty to one count of receipt of child pornography, reserving the right to appeal the district court’s decision on his motion to suppress and for a Franks hearing. The district court sentenced Perkins to an 180-month term of imprisonment.
Perkins appealed. On July 25, 2014, we reversed the district court’s. denial of a Franks hearing. United States v. Perkins, 583 Fed.Appx. 796, 797 (9th Cir. 2014).[1] We concluded that, based on Agent Ens-ley’s omissions of: the dropping of the Canadian charge; portions of Constable Ullock’s description of the images; and copies of the images, Perkins had made a substantial preliminary showing that Agent Ensley deliberately or recklessly omitted potentially material information. Id. We remanded to the district court to hold a Franks hearing. Id.[2]
*1115 D. The Franks Hearing
The district court held the Franks hearing on November 13, 2014. Agent Ensley was the only witness. He testified that it was the “general practice” in the Western District of Washington not to provide copies of the images at issue. Agent Ensley further testified that he omitted the fact that Canadian authorities dropped the charge against Perkins because he believed this fact was “irrelevant to [his] development of probable cause in the U.S., based on U.S. laws.”
Agent Ensley also testified about his drafting process. He stated that, prior to receiving the images, he had already “fully drafted” the affidavit using Constable Ul-lock’s report. He used' Constable Ullock’s descriptions as a “temporary filler” in the draft but ultimately omitted portions that he deemed to be irrelevant “legal conclusions ... based on Canadian law.” However, when pressed about the differences between Canadian and U.S. child pornography laws, Agent Ensley conceded that the “sexual purpose” requirement under Canadian law and the “lascivious” requirement under U.S. law were “connected, obviously in a certain way. The lascivious exhibition — It does have a sexual aspect to it, a sexual exhibition of the genitalia, yes.” Agent Ensley admitted that whether an image depicts the lascivious exhibition of genitals or pubic area (and is therefore pornographic under U.S. law) is “very subjective.” However, he maintained that it was “very clear to [him]” that the 989.jpg image was child pornography.
On February 11, 2015, the district court concluded that Agent Ensley did not intentionally or recklessly mislead the magistrate. The court reaffirmed its prior 2013 determination that the affidavit established probable cause and again denied Perkins’ motion to suppress. United States v. Perkins, 2015 WL 630934 (W.D. Wash. 2015). Perkins timely appealed.
II.
We review for clear error a district court’s findings that an affidavit did not contain purposefully or recklessly false statements or omissions. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003). “Review under the clearly erroneous standard is significantly deferential, ‘requiring for reversal a definite and firm conviction that a mistake has been committed.’ ” Id. (quoting United States v. Maldonado, 215 F.3d 1046, 1050 (9th Cir. 2000)). We review de novo the district court’s determination “whether probable cause is lacking because of alleged misstatements or omissions in the supporting affidavit.” Id. (quoting United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000)). “Whether any omissions or misstatements are material is a mixed question of law and fact which we also review de novo.” Id. (citation omitted).
‘We are also obligated, where possible, to review de novo the legal determination that a given image depicts a ‘lascivious exhibition of the genitals.’ ” United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001) (footnote omitted) (quoting United States v. Amirault, 173 F.3d 28, 32-33 (1st Cir. 1999). In this respect, “[o]ur task [is just] like that of the magistrate judge and district court ... ‘simply to make a practical, common-sense decision....’” Id. at 16 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
III.
Preliminarily, we note that in the search warrant affidavit, Agent Ensley *1116 opined that the 989.jpg image met the federal definition of child pornography under 18 U.S.C. § 2256(2)(A)(v), the “lascivious exhibition of the genitals or pubic area of any person.” While “[t]he first four categories [of ‘sexually explicit conduct’ under § 22546(2)(A) ] deal with specific conduct that is easy to identify and describe ... [t]he fifth category, which turns on the meaning of ‘lascivious,’ is far more subjective and open to interpretation than the first four.” United States v. Battershell, 457 F.3d 1048, 1051 (9th Cir. 2006) (citing Brunette, 256 F.3d at 18)). In Battershell, we further noted that in Brunette, the First Circuit “held that ‘ordinarily, a magistrate judge must view an image in order to determine whether it depicts the lascivious exhibition of a child’s genitals.’ ” Id. at 1053 (quoting Brunette, 256 F.3d at 19).
Perkins argues that Agent Ens-ley intentionally or recklessly omitted material information from the warrant application and that, had that information been included, the application would not have supported probable cause. Under Franks, a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant. 438 U.S. at 155-56, 98 S.Ct. 2674. To prevail on a Franks challenge, the defendant must establish two things by a preponderance of the evidence: first, that “the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]” and second, that the false or misleading statement or omission was material, i.e., “necessary to finding probable cause.” United States v. Martinez-Garcia, 397 F.3d 1205, 1214-15 (9th Cir. 2005). If both requirements are met, “the search warrant must be voided and the fruits of the search excluded.... ” Franks, 438 U.S. at 156, 98 S.Ct. 2674. Because we conclude that Perkins has established both prongs under Franks, we hold that the district court erred in denying his motion to suppress.
A. Intentional or Reckless Disregard for the Truth
Under the first step of Franks, the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application. Martinez-Garcia, 397 F.3d at 1214. A negligent or innocent mistake does not warrant suppression. Franks, 438 U.S. at 171, 98 S.Ct. 2674. “[A] warrant affidavit must set forth particular facts and circumstances ... so as to allow the magistrate to make an independent evaluation of the matter.” Id. at 165, 98 S.Ct. 2674 (emphasis added). “Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.” Illinois v. Gates, 462 U.S. at 239, 103 S.Ct. 2317. An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate. United States v. Hill, 459 F.3d 966, 971 n.6 (9th Cir. 2006).
Agent Ensley omitted from the search warrant application: (1) the fact that Canadian authorities dropped the child pornography possession charge against Perkins because the images were not pornographic; (2) important portions of Constable Ullock’s description of the 989.-jpg image; and (3) copies of the images. At the time he submitted the affidavit, Agent Ensley knew of the dropped charge and of Constable Ullock’s description, and had possession of the images. Indeed, he testified that he used Constable Ullock’s report as the starting point — a template — in drafting his own affidavit. We conclude *1117 that Agent Ensley omitted relevant information from the affidavit that resulted in the misleading impression that image 989.-jpg was unequivocally child pornography. Given these circumstances, we conclude that the district court’s finding that Agent Ensley did not intentionally or recklessly mislead the magistrate is clearly erroneous. He acted with at least a reckless disregard for the truth by failing to furnish copies of the images to the magistrate and by his omissions of portions of Constable Ullock’s report, which, had to be fresh in his mind, for the magistrate’s independent review.
The district court accepted Agent Ens-ley’s explanation that he omitted legal opinions from Canadian authorities, which he deemed irrelevant to the question of probable cause under U.S. law. Notwithstanding the significant deference afforded to the district court, we cannot agree that this is a credible explanation. First, Agent Ensley’s testimony that Canadian and U.S. laws are “extremely different” is not plausible. During the Franks hearing, Agent Ensley accurately described the respective definitions of child pornography under Canadian and U.S. laws.[3] He summarized Canadian law as containing three requirements: (1) the individual must be under 18 years old; (2) the genital or pubic area must be the prominent feature of the visual depiction; and (3) there must be a sexual purpose. But Agent Ensley conceded that the first two requirements are similar under U.S. law. As for the third requirement, he could not articulate a meaningful difference between Canada’s “sexual purpose” requirement and the U.S.’s “lascivious” requirement. He also acknowledged that whether either requirement is met is a subjective determination. Thus, he could hardly identify any material distinction between the two laws, despite his own opinion that they were “extremely different.”
Second, Agent Ensley’s testimony is belied by his own affidavit. Agent Ensley’s repeatedly stated that he omitted Constable Ullock’s opinions about the images because they were based on irrelevant Canadian law. Yet Agent Ensley did include the opinions of Canadian officials who, after viewing the images, concluded, presumably under Canadian law, that they were pornographic. Specifically, he explained that “the CBSA officer believed [one of the images] to be child pornography,” and that a PRP officer arrested Perkins after reviewing the images. Along those lines, the affidavit stated that Perkins was arrested after the PRP officer reviewed the two images, but omitted the fact that the charge was dropped after a 15-year veteran officer, specializing in the investigation of child exploitation crimes, examined those same two images and concluded they were not pornographic.
These omissions reveal a clear, intentional pattern in Agent Ensley’s actions: he selectively included information bolstering probable cause, while omitting information that did not. We have recognized that an affiant can mislead a magistrate “[b]y reporting less than the total story, [thereby] ... manipulating] the infer- *1118 enees a magistrate will draw.” United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985), amended by 769 F.2d 1410 (9th Cir. 1985). Agent Ensley presented a skewed version of events and overstated the incriminating nature of the images. This is not unlike the situation in United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993), where the affiant acted at least recklessly when he correctly stated that the drug dog showed an “interest” in the defendant’s package, but omitted the fact that the drug dog failed to make an official “alert.” Id. at 1234-35. Similarly, although Agent Ensley correctly stated that Perkins was arrested based on two Canadian officers’ review of the images, he failed to inform the magistrate that an expert review of those same images led to the charge being dropped.
Nor was Agent Ensley’s description of the 989.jpg image a reliable substitute for the image itself. Agent Ensley knowingly excluded relevant information contained in Constable Ullock’s description of the 989.-jpg image. Specifically, he omitted Constable Ullock’s explanation that “[t]owards the bottom of the picture a small portion of her vagina can be seen” and that “the view of the girls’ [sic] vagina makes it a minor aspect of the 'photo[.]” Details about the placement and prominence of genitalia is highly relevant to determining whether an image is lascivious. See Overton, 573 F.3d at 686 (factors in determining lasciviousness include whether the focal point of the depiction is on the child’s genitalia or pubic area and whether the visual depiction is intended or designed to elicit a sexual response). Agent Ensley knowingly excised unfavorable parts of Constable Ul-lock’s description.[4] In their place, he opined in a conclusory manner that the genital area was “clearly visible” — a characterization that was misleading, at best.[5]
By providing an incomplete and misleading recitation of the facts and withholding the images, Agent Ensley effectively usurped the magistrate’s duty to conduct an independent evaluation of probable cause. See United States v. Lull, 824 F.3d 109, 116-17 (4th Cir. 2016) (holding that an affiant acted at least recklessly by omitting facts about an informant’s credibility and “usurp[ed] the magistrate’s role” in determining probable cause). Whether an image depicts the “lascivious exhibition of the genitals or pubic area of any person,” and therefore constitutes child pornography, is a subjective determination. Battershell, 457 F.3d at 1051. “[S]uch ‘inherent subjectivity is precisely why the determination should be made by a judge,’ not the affi-ant.” United States v. Pavulak, 700 F.3d 651, 662 (3d Cir. 2012) (quoting Brunette, 256 F.3d at 18). Given the circumstances of this case, Agent Ensley was required to provide copies of the images for the magistrate’s independent review.[6] Instead, he *1119 merely proffered his own conclusion about the 989.jpg image, based on an incomplete and misleading description of the image. This was a breach of the duty Agent Ens-ley owed to the court. See United States v. Ruiz, 758 F.3d 1144, 1149 (9th Cir. 2014).
In sum, the record leaves us with a definite and firm conviction that the district court clearly erred in finding that Agent Ensley did not act with at least a reckless disregard for the truth. Because Agent Ensley “omitted facts required to prevent technically true statements in the affidavit from being misleading,” we now turn to the question of whether the affidavit, “once corrected and supplemented, establishes probable cause.” Id. at 1148 (quoting Ewing v. City of Stockton, 588 F.3d 1218,1223 (9th Cir. 2009)).
B. Probable Cause
Under the second step of Franks, the question is whether the omitted fact is “material”; that is, whether it is “necessary to the finding of probable cause.” 438 U.S. at 156, 98 S.Ct. 2674. The key inquiry is “whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.” Ruiz, 758 F.3d at 1149. Probable cause to search a location exists if, based on the totality of the circumstances, there is a “fair probability” that evidence of a crime may be found there. Hill, 459 F.3d at 970 (citation omitted).
Once corrected, the search warrant application would include a copy of the 989.-jpg image (and the 997.jpg image) and any probable cause determination would be based on a direct review of the images themselves. Thus, Agent Ensley’s written description of the images are extraneous. Apart from the images, which were found in the “cperk” folder of the laptop, Perkins’ two 20-year-old convictions are the only other potentially suspicious fact.[7] Under these circumstances, we conclude that a corrected warrant application would not support probable cause.

1. Prior Convictions

 We áre persuaded that the convictions are only marginally relevant, if *1120 at all. A suspect’s criminal history “can be helpful in. establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover.” United States v. Nora, 765 F.3d 1049, 1059 (9th Cir. 2014) (quoting Greenstreet v. Cty. of San Bernardino, 41 F.3d 1306, 1309 (9th Cir. 1994)). However, a past conviction is relevant only to the extent it increases the likelihood that evidence of the suspected crime will be found. See id. (holding that the defendant’s prior firearms convictions did not speak to the issue of “whether a fair probability existed that [he] owned other firearms ... and thus are of marginal relevance to the probable cause issue before us”). “[T]he bare inference that those who molest children are likely to possess child pornography ... does not establish probable cause to search a suspected child molester’s home for child pornography.” United States v. Needham, 718 F.3d 1190, 1195 (9th Cir. 2013).
Perkins had two prior convictions: one for first-degree incest in 1987 and one for first-degree child molestation in 1990. The affidavit does not explain why these convictions, both more than twenty years old, made it more likely that child pornography would be found on Perkins’ home computers. At most, Agent Ensley offers a boilerplate description of a child pornography collector, characterized as someone who “may receive sexual gratification, stimulation, and satisfaction from contact with ehildren[.]” Such a generalized statement, which “was not drafted with the facts of this case or this particular defendant in mind,” does little to support probable cause. United States v. Weber, 923 F.2d 1338, 1345 (9th Cir. 1990); see also Pavulak, 700 F.3d at 663 (“Pavulak’s prior child-molestation convictions are not sufficient to establish or even to hint at probable cause as to the wholly separate crime of possessing child pornography absent any allegation of a correlation between the two types of crimes.” (citation omitted)).
The age of Perkins’ convictions further diminishes any marginal relevance they may have had. As explained in United States v. Falso, 544 F.3d 110 (2d Cir. 2008), the length of time that elapses between a prior crime and the suspected offense is relevant to the probable cause analysis. Id. at 123. In Falso, the court deemed the defendant’s 18-year-old sexual abuse of a minor conviction as “only marginally relevant” to the suspected child-pornography offense. Id. Although the court recognized that “there are cases where it may be appropriate for a district court to consider a dated sex crime[,] for example, where there is evidence of ongoing impropriety,” the affidavit did not “bridge the temporal gap between Falso’s eighteen-year old sex offense and the suspected child-pornography offense.” Id. (citation omitted). Likewise here, there is nothing to connect Perkins’s 20-year-old convictions to whether there was a fair probability that Perkins had child pornography on his home computer.
The government, citing United States v. Colbert, 605 F.3d 573 (8th Cir. 2010), argues that “[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography.” Id. at 578. The government’s reliance on Colbert is misplaced. In Colbert, police obtained a warrant to search the defendant’s home for child pornography after receiving a report that the defendant had attempted to entice a five-year-old at a park to follow him to his apartment, “where he claimed he had movies for her to watch and other things for her to do.” Id. at 577-78. Thus, the warrant was for “the very place where Colbert had expressed a desire to be alone with a *1121 five-year-old girl.” Id. at 578. The court explained:
Colbert’s attempt to entice a child was a factor that the judicial officer reasonably could have considered in determining whether Colbert likely possessed child pornography, all the more so in light of the evidence that Colbert heightened the allure of his attempted inveiglement by telling the child that he had movies she would like to watch. That information established a direct link to Colbert’s apartment and raised a fair question as to the nature of the materials to which he had referred.
Id. (emphasis added). In other words, the warrant to search the defendant’s home for child pornography was based on the defendant’s “contemporaneous attempt to entice a child,” during which the defendant referenced viewing materials, establishing a common link between the two crimes. Id. at 577 (emphasis added). This is a far cry from a suspicion that Perkins’ home computers contained child pornography based on his child molestation conviction from more than 20 years ago.
Absent any explanation as to why Perkins’ 20-year-old convictions made it more likely that he possessed child pornography, we conclude that the convictions do not support probable cause.

2. Images

We now turn to the question of whether the two images, found in the “cperk” folder of the laptop that Perkins carried while passing through Canada, are sufficient to establish a fair probability that there was child pornography on Perkins’ home computer in Washington. We conclude that the answer is no.
In cases of suspected possession of child pornography where the warrant application relies on the individual’s possession of certain images, we assess whether those images constituted child pornography. See, e.g., Battershell, 457 F.3d at 1051-53; Hill, 459 F.3d at 970-71 (“Thus the more precise question we must answer is whether the officer’s affidavit established probable cause that the images on the defendant’s computer were — as described — lascivious.”). The typical starting point for determining whether a particular image is lascivious, and therefore pornographic, is the six-factor test articulated in Dost, 636 F.Supp. 828. Those factors are:
1) whether the focal point of the visual depiction is on the child’s genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose, generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
Id. at 832. The Dost factors “are neither exclusive nor conclusive,” and courts may consider “any other factor that may be relevant in a particular case.” Overton, 573 F.3d at 686-87.
We first note that Perkins legally possessed both the 989.jpg and 997.jpg images in Canada. When all was said and done, Canadian authorities concluded that neither image was pornographic. We conclude that the 997.jpg image does not constitute child pornography, and the government does not contend otherwise. That leaves *1122 the 989.jpg image.[8] The image appears to be a selfie, taken by the subject of herself, who is holding the camera at an angle slightly above her head and shooting downwards. The image captures the subject’s forehead down to her upper thigh. Because of the angle,' her head and torso predominate the image and cast a shadow on the genital area, which is pictured in the far bottom right-hand corner. She is sitting down, although it is unclear on what.
Other than the fact that the subject is nude, the image lacks any traits that would make it sexually suggestive. But “not all images of nude children are pornographic.” Hill, 459 F.3d at 970; see also Dost, 636 F.Supp. at 832 (“[T]he visual depiction may not constitute a ‘lascivious exhibition’ of the genitals, despite the fact that the genitals are visible.”). The subject is not posed in a sexual position with, for example, “her open legs in the foreground.” Dost, 636 F.Supp. at 832. She is not pictured with any sexual items. She is sitting in an “ordinary way for her age.” Id. Indeed, if the subject were clothed, this would be a completely unremarkable photo. Viewing the image as a whole, we conclude, under the Dost six-factor test, that it does not depict the “lascivious exhibition of the genitals or pubic area.”[9] 18 U.S.C. § 2256(2)(A)(v).
In short, a warrant application explaining that an individual with two 20-year-old convictions was in legal possession of two non-pornographic images while traveling through Canada is insufficient' to support probable cause to search his home computers in Washington for child pornography.[10] We therefore conclude that Agent Ensley’s omissions, including particularly a copy of the 987.jpg image, were material under the second step of Franks.[11]
We emphasize that this was an investigation of a suspected “lascivious” image under § 2256(2)(A)(v), the meaning of *1123 which is subjective. Battershell, 457 F.3d at 1051. And to make that subjective determination, “we rely on the judgment of neutral and detached magistrates to determine whether probable cause exists.... ” Id. at 1050. As the First Circuit noted in Brunette, “[t]hat inherent subjectivity is precisely why the determination should be made by a judge, not an agent.” And that “[a] judge cannot ordinarily make this determination without ... a look at the allegedly pornographic images.... ” 256 F.3d at 18.[12]
IV.
We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least a reckless disregard for whether the omissions would render the warrant application misleading. Had the omitted information been included, the application would not have supported probable cause. We, therefore, reverse the district court’s denial of the motion to suppress evidence obtained pursuant to the search warrant, and vacate Perkins’ conviction. The case is remanded for furthér proceedings consistent with this opinion.
REVERSED, conviction VACATED, and REMANDED.

. We did not reach Perkins’ appeal from the denial of his motion to suppress. Perkins, 583 Fed.Appx. at 797 ("We do not reach his motion to suppress.”).

. The dissent reads our prior reversal more narrowly, concluding that "the district court ... was not required to consider whether Agent Ensley recklessly or deliberately omitted the actual images from the search warrant application.” Dissent at 1125. But our earlier mandate contained no such limitation. We reversed and remanded for further proceedings, including the holding of a Franks hear- *1115 tag. Perkins, 583 Fed.Appx. at 797. As noted earlier, see footnote 1, supra, we did not reach the probable cause issue on which the appeal from the denial of the motion to suppress was based. See id.

. Canadian Criminal Code 163.l(l)(ii) defines child pornography as a visual representation of a child where the "dominant characteristic ... is the depiction, for a sexual purpose, of a sexual organ.” Under U.S. law, child pornography is the visual depiction of a minor engaging in "sexually explicit conduct.” 18 U.S.C. § 2256(8). As relevant here, "sexually explicit conduct” includes the "lascivious exhibition of the genitals or pubic area.” Id. § 2256(2)(A)(v). Whether a depiction is “lascivious” depends on several factors, including whether the focal point is on the child’s genitalia or pubic area and whether the depiction is intended or designed to elicit a sexual response in the viewer. United States v. Overton, 573 F.3d 679, 686 (9th Cir. 2009).

. Agent Ensley's testimony that he removed portions of the description that were legal conclusions based on irrelevant Canadian law is not credible. As recited above, he could not explain any significant difference between the U.S. and Canadian definitions of child pornography. Additionally, the omitted details were factual descriptions, not legal conclusions.

. Agent Ensley's description of the 989.jpg image states that the girl is "sitting on what appears to be a bed.” Constable Ullock's description omits, accurately, any mention of a “bed.” Agent Ensley’s apparent purpose in attesting to that speculation as a fact is because it is one of the Dost factors. See United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal. 1986) ("whether the setting of the visual depiction is sexually suggestive, i.e., in a place ... generally associated with sexual activity”), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987). The Dost factors are fully discussed in Part III.B.2, infra.

.The dissent asserts that we make a "fatal error” by "retroactively appl[ying] a new rule.” Dissent at 1123-24; see also > id. at *1119 1127-28 n.4 (contending that the district court did not err because "our case law did not establish that Agent Ensley was required to include copies of the images in the first place”). But it has been clearly established law at least since Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a ‘clear break’ with the past.” Id. at 328, 107 S.Ct. 708.

. Citing United States v. Krupa, 658 F.3d 1174 (9th Cir. 2011), the government gestures to the "circumstances” under which the images were found and argues that they support probable cause. In Krupa, we held that there was probable cause to search the defendant’s computers, based on the "unquestionably suspicious” circumstances of "15 computers under the control of a civilian with no apparent ties to the military in a home on a military base in which children resided and for which the military police had received a report of child neglect.” Id. at 1178-79. By contrast, Perkins was not found in an unusual place where his mere presence was questionable. He arrived in Toronto with his wife and mother-in-law after completing a cruise to Chile. No ongoing incident or contemporaneous report led Canadian border authorities to stop Perkins. No children were involved. Perkins was stopped only because of his prior convictions, which, as explained below, do not support probable cause. Given that he had been traveling, the amount of technology he was carrying (a laptop, digital camera, three memory cards, and a cell phone) was not suspicious. Moreover, a search of all these devices revealed only the two images as possible contraband. And, as it turned out, Perkins was not in possession of any contraband, i.e., child pornography, at the locus where he possessed the suspected images, in Canada. Krupa does not support the government’s position.

. Neither the 989.jpg image nor the 997.jpg image is a part of the record. The government, however, concurrently with the filing of its answering brief, filed a motion for leave to file electronic copies of these two images under seal. We granted the unopposed motion and commend the government for its candor. The panel has viewed both images.

. We note that "[o]ur task, like that of the magistrate judge and the district court, ‘is simply to make a common-sense decision. ..” Brunette, 256 F.3d at 16 (quoting Illinois v. Gates, 462 U.S. at 238, 103 S.Ct. 2317).

. Quoting United States v. McCarty, 648 F.3d 820, 839 (9th Cir.2011), that "the government is not required to prove that all or any of the photographs actually exhibited child pornography in order to establish probable cause for [the defendant’s] arrest,” the dissent implies an obverse rule under which photos are never required, regardless of the circumstances. Dissent at 1129. But that statement must be read against the backdrop of controlling law that McCarty recognizes, that "the officers [must have] an objectively reasonable belief that [the defendant] committed a crime, based on the totality of the relevant circumstances.” 648 F.3d at 839. Here, given that the images were not pornographic and were legally possessed by Perkins in Canada, and the only other evidence tendered in support of probable cause was two 20-year-old convictions, Agent Ensley’s "belief that [Perkins] committed crimes related to child pornography was [rcoi] an objectively reasonable one.” Id. at 840.

.The dissent criticizes the majority for • "fail[ing] to adequately address the fact that Agent Ensley’s expert conclusion that one of the images was child pornography would remain in a corrected- affidavit.” Dissent at 1128. But a corrected affidavit would also contain Constable Ullock’s expert conclusion that the image was not pornography — that the image had "no obvious sexual purpose.” This split of expert opinion only heightens the need to make the image available for the magistrate’s independent review. In this regard, we note that the best the dissent can muster up is that the image is "borderline.” Id.

. Our determination that in § 2256(2)(A)(v) investigations, search warrant applications should ordinarily include copies of the offending images is not contrary to Battershell, in which we observed that "failing to include a photograph in a warrant application is not fatal to establishing probable cause.” 457 F.3d at 1053. There, we were concerned with investigations into possible violations of § 2256(2)(A)(i)-(iv), not with a possible violation of subdivision (v). Contrary to the dissent's argument, Battershell confirms, rather than contradicts, our approach. There, we held that "[t]he fifth category, which turns on the meaning of 'lascivious,' is far more subjective and open to interpretation than the first four.” Battershell, 457 F.3d at 1051. Because of this, the court in Battershell concluded that "Officer Lobdell’s terse description, absent an accompanying photograph, is insuf-fident to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because his conclusory statement is an inherently subjective analysis and it is unclear if the photograph exhibited the young female's genitals or pubic area.” Id. (emphasis added) (citations omitted). Moreover, the Battershell court’s subsequent statement that "failing to. include a photograph in a warrant application is not fatal to establishing probable cause” was in reference to a second photograph that depicted a child engaged in sexual intercourse, which was deemed to be sexually explicit under one of the first four categories of § 2256(2)(A). Id. at 1053. The 989.jpg image here more closely resembles the first image in Battershell, which depicts a naked young female in a bathtub, than it does the second image, which depicts intercourse.