**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

CHRISTOPHER TODD BOUDREAU,

*Defendant - Appellant*.

No. 23-4092

D.C. No.
9:22-cr-00046-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted April 2, 2025
Portland, Oregon

Filed September 16, 2025

Before: Jay S. Bybee, Kenneth K. Lee, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Forrest

# SUMMARY[*]

## Criminal Law

The panel affirmed Christopher Todd Boudreau's conviction and sentence for attempted coercion and enticement of a minor to engage in illegal sexual activity under 18 U.S.C. § 2422(b) and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).

The panel held that the district court did not err in denying Boudreau's motion to suppress child pornography seized from his residence. Given the totality of circumstances, the warrant—issued to search for evidence of a crime under Montana Code § 45-5-625, which criminalizes both enticement of a minor and possession of child pornography—was supported by probable cause to believe not only that evidence of enticement would be found at Boudreau's residence, but also evidence of child pornography. Boudreau's argument under *Franks v. Delaware*, 438 U.S. 154 (1978), that suppression is required because of a detective's knowing or reckless omission from his affidavit, fails because the omission was immaterial.

Boudreau argued that the district court erred by not severing the two charges. Because the elements of enticement of a minor and possession of child pornography overlap, these offenses are of the same or similar character under Fed. R. Crim. P. 8(a), and the district court did not err in declining to sever the charges.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not err under either Fed. R. Evid. 404(b) or 403 in denying Boudreau's motion in limine to exclude evidence of his separate uncharged interactions with a 17-year-old girl.

Boudreau argued that the sentence imposed on his possession-of-child-pornography offense is substantively unreasonable—specifically, that U.S.S.G. § 2G2.2 is "seriously flawed" because it inflates the offense level, resulting in unjust sentencing disparities that are inconsistent with 18 U.S.C. § 3553. Finding no error, the panel concluded that the district court did not abuse its discretion in concluding that the sentence did not result in unwarranted sentencing disparity under 18 U.S.C. § 3553(a)(6).

## COUNSEL

Tim Tatarka (argued), Zeno B. Baucus, and Brian C. Lowney, Assistant United States Attorneys; Jesse A. Laslovich, United States Attorney; Office of the United States Attorney, United States Department of Justice, Billings, Montana; for Plaintiff-Appellee.

David A. Mattingley (argued), diStefano & Mattingley PLLP, Kalispell, Montana, for Defendant-Appellant.

## OPINION

FORREST, Circuit Judge:

Defendant Christopher Todd Boudreau was arrested after attempting to meet up for sex with someone he thought was a 12-year-old girl. His residence was later searched and law enforcement found voluminous videos and images of minors engaged in sex acts. Boudreau was convicted of attempted coercion and enticement of a minor to engage in illegal sexual activity under 18 U.S.C. § 2422(b) and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). On appeal, he challenges the district court's denial of three pretrial motions: (1) his motion to suppress the child pornography seized from his residence; (2) his motion to sever the two charges in his indictment as improperly joined; and (3) his motion in limine to exclude evidence about a relationship that he pursued with a 17-year-old girl during the same month as his charged conduct. Boudreau also appeals the substantive reasonableness of his sentence. We affirm.

## BACKGROUND

Detective Travis Wafstet works in the Missoula County Sheriff's Office and is also a member of the FBI's Child Exploitation and Human Trafficking Task Force. He created several accounts for a fictional 12-year-old girl named "Mia" on various social-media and online-dating platforms. In July 2022, Boudreau contacted "Mia" on Facebook. "Mia" provided her cell phone number, and for a week Boudreau texted with her extensively. Boudreau acknowledged that he was communicating with someone he believed was a 12-year-old girl, and at various points expressed a sexual interest in her. Eight days after making initial contact with

"Mia," Boudreau traveled from his home in Anaconda, Montana, to Missoula, intending to meet and have sex with "Mia," which he indicated would be her "first time." He was arrested at the designated meeting location after law enforcement observed him following directions sent in text messages from "Mia's" number.

After Boudreau's arrest, Detective Wafstet sought a search warrant for Boudreau's residence to search for evidence of a violation of Montana Code § 45-5-625, which criminalizes both enticement of a minor and possession of child pornography. The warrant application listed as evidence to be seized all "electronic device[s] capable of receiving and transmitting data or storing electronic data" and any "[v]isual depictions" of minors "in a state of undress [or] engaging in sexual activity."

Detective Wafstet swore to the following facts regarding his undercover investigation to establish probable cause to search. Boudreau encountered "Mia" on a social media platform and direct messaged her online before transitioning to SMS text message. Boudreau used "grooming techniques" to bond with "Mia," likely with the intention of later engaging in sexual activities with her. And Boudreau repeatedly sought to meet with "Mia," offered to be her "personal photographer," and made sexual comments about her.

Detective Wafstet also described the circumstances of Boudreau's arrest. Boudreau arranged to meet with "Mia" on the date of his arrest, indicated his sexual desires, offered to rent a room, and provided a meet-up location. Officers waited for Boudreau at the designated location, directed where he should park, and observed him arrive. Officers then arrested Boudreau and interviewed him. Detective Wafstet

recounted that Boudreau admitted that he watched pornography and had a computer at his residence but that he "would not state what search terms he used when he watched pornography."

Finally, the warrant affidavit outlined Detective Wafstet's training and experience. At the relevant time, he was a member of the joint Montana-FBI Child Exploitation and Human Trafficking Task Force, had been in law enforcement for nine years, had received specialized training in child-abuse and sexual-offense investigations, and had completed several undercover operations involving sexual enticement of children. From this training and experience, Detective Wafstet explained that computers "are the primary way in which individuals interested in child enticement interact with each other and with intended child victims," that computers facilitate the storage and sharing of child pornography, and that the internet facilitates easy access to child pornography. He also stated that "there are certain characteristics common to individuals who have a sexualized interest in children and are communicating with children online," including "collect[ing] sexually explicit or suggestive materials in a variety of media," and "maintain[ing] their child pornography collections . . . in a digital or electronic format." His affidavit concluded with his opinion that, because of how Boudreau communicated with "Mia," Boudreau "likely has a sexualized interest in children and depictions of children" and "that evidence of child pornography and additional child enticement" was likely to be found at Boudreau's residence.

A Montana state judge issued a search warrant for Boudreau's residence, authorizing law enforcement to search for evidence of both enticement of a minor and possession of child pornography. Officers executed the

warrant and seized a hard drive from Boudreau's bedroom. Officers then secured a second warrant to search the data on the hard drive, and they found voluminous videos and images of children engaged in sexual activities. Following these searches, Boudreau was indicted on the two charges on which he was convicted.

Before trial, Boudreau moved to suppress the child pornography seized from his residence, arguing that officers lacked probable cause and that Detective Wafstet made deliberate misrepresentations or omissions. He also moved to sever the two charges in his indictment, arguing that the elements of the counts differ. The district court denied both motions.

The Government also provided notice before trial that it intended to introduce evidence that during the same summer that Boudreau communicated with "Mia," he pursued a relationship with a 17-year-old girl named Hope and a protective order was entered against him. Boudreau moved in limine to exclude this evidence, and his motion was denied. At trial, Hope testified that she met Boudreau in the summer of 2022, began "hanging out with him" and exchanging texts, was "intimate" with him "once or twice," and that he asked her for nude pictures (which she did not send). She testified that she told Boudreau her age. She also testified that Boudreau repeatedly called her his "girlfriend," and the jury was shown texts where he repeatedly called her "beautiful."

After the jury found Boudreau guilty on both charges, the district court calculated Boudreau's Sentencing Guidelines range as 151 to 188 months imprisonment, which the parties agreed was correct. After considering the sentencing factors under 18 U.S.C. § 3553(a), the district

court sentenced Boudreau to a 154-month term on each offense, to run concurrently. Boudreau timely appealed.

## DISCUSSION

### I.  Motion to Suppress

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "To supplement the bare text" of the Fourth Amendment, the Supreme Court "created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231−32 (2011). The exclusionary rule "encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation modified) (citation omitted). We review the district court's denial of a motion to suppress evidence under the Fourth Amendment de novo and any underlying factual findings for clear error. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017).

Boudreau makes two arguments for suppressing the child pornography found at his residence. First, he contends that the warrant was not supported by probable cause to believe that child pornography would be found. Second, he contends that the affidavit supporting the warrant application contained knowingly false or reckless statements, demanding suppression under *Franks v. Delaware*, 438 U.S. 154 (1978).

## A. Probable Cause

A warrant may "be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). A warrant is supported by probable cause if, based on the totality of the circumstances, the application establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Gourde*, 440 F.3d 1065, 1069–74 (9th Cir. 2006) (en banc) (stressing the application of the "fair probability" standard in child pornography cases). The issuing judge is "entitled to rely on the training and experience of police officers" when evaluating whether a warrant affidavit establishes probable cause. *United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2002) (quoting *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995)); *see also Weber*, 923 F.2d at 1345 ("It is well established that [an] expert opinion may be presented in a search warrant affidavit."). And appellate courts are to give "great deference" to the issuing-judge's probable-cause determination, interpretating affidavits in a "common[ ]sense" rather than "hypertechnical" manner. *Gates*, 462 U.S. at 236.

To start, to the extent that the Government suggests the child pornography found at Boudreau's residence should not be suppressed because the search warrant affidavit established probable cause to believe that officers would find evidence of enticement of a minor on Boudreau's computer, this argument fails. For this argument to plausibly work, the Government must have argued that the child pornography inevitably would have been discovered because it was in plain view on Boudreau's hard drive during the officers' lawful search for evidence of enticement. But the Government did not cite or discuss either the inevitable-

discovery exception or the plain-view doctrine. *Cf., e.g.*, *Nix v. Williams*, 467 U.S. 431, 440–48 (1984) (adopting the inevitable-discovery doctrine); *Arizona v. Hicks*, 480 U.S. 321, 325–29 (1987) (explaining the requirements of the plain-view doctrine). Therefore, we do not address whether either principle applies here. *See* Fed. R. App. P. 28(a)(8), (b); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Instead, in this case the Government must show that the warrant application contained sufficient indicia of probable cause to believe that Boudreau possessed child pornography at his residence.

Two cases guide our analysis of whether the search warrant established probable cause to search for evidence of possession of child pornography. First, in *United States v. Gourde*, a warrant was issued specifically for the purpose of searching a suspect's home for evidence of child pornography. 440 F.3d at 1067. The supporting affidavit outlined the arrest of a nonparty owner of a pornography website, the owner's admission that the website contained images of child pornography, information from a credit-card processor suggesting that the defendant subscribed to the website, and investigators' opinions about how collectors and distributors of child pornography operate and about how long computer files remain on a computer even after they are deleted. *Id.* at 1067–68. We held that these facts established sufficient indicia of probable cause. *Id.* at 1069. We emphasized that "the only inference the magistrate judge needed to make to find probable cause was that there was a 'fair probability' Gourde had, in fact, received or downloaded images." *Id.* at 1071. And we held that such inference "neither strains logic nor defies common sense . . . based on the totality of these circumstances." *Id.*

By contrast, in *Dougherty v. City of Covina*, the warrant affidavit described allegations about a teacher's inappropriate conduct with students occurring at school and the officer's "100 hours of training involving juvenile and sex crimes," which led him to opine that "subjects involved in this type of criminal behavior have in their possession child pornography." 654 F.3d 892, 896 (9th Cir. 2011). We held that this was insufficient to establish probable cause to search for child pornography because, "[a]lthough there does not need to be direct evidence of solicitation of child pornography to create probable cause" that such content will be found, there must be "a 'substantial basis' for the finding." *Id.* at 898 (citations omitted). We rejected a categorical approach: that "evidence of child molestation, alone, creates probable cause for a search warrant for child pornography." *See id.* at 899 (noting that "while the 'totality of circumstances' could, in some instances, allow us to find probable cause to search for child pornography," the affidavit was too conclusory).

The search warrant affidavit in *Dougherty* contained only a hunch that child pornography would be found supported by an officer's conclusory opinion. *See id.* at 898–99. There was "no evidence of receipt of child pornography," *id.* at 898, nor a sufficient basis to conclude that the teacher "was interested in viewing images of naked children or of children performing sex acts," *id.* at 898–99. There was "no evidence of conversations with students about sex acts, discussions with children about pictures or video, or other possible indications of interest in child pornography." *Id.* at 899. Indeed, the affidavit did not establish "that [the teacher] owned a computer . . . or had internet service or another means of receiving child pornography at his home." *Id.*

This case falls between *Gourde* and *Dougherty*. Unlike *Gourde*, the search warrant was not issued specifically to search for evidence of child pornography. Rather, similar to *Dougherty*, the supporting affidavit focused on facts related to Boudreau's commission of a related but distinct crime—attempted enticement of a minor. Under our precedent, this alone does not establish probable cause to search his residence for evidence of *any* crime related to a sexual interest in children. *See Dougherty*, 654 F.3d at 899. But relevant facts and circumstances from a related offense may contribute to the totality of the circumstances supporting probable cause to search for evidence of child pornography. Such is the case here.

Detective Wafstet's affidavit presented more facts supporting probable cause to believe that evidence of child pornography would be found at the suspect's residence than did the affidavit in *Dougherty*. First, Detective Wafstet explained that Boudreau used digital technology to further his sexual interest in children. Unlike in *Doughtery*, where the affidavit described only a "three-year-old allegation of attempted molestation by one student and current allegations of inappropriate touching of and looking at students" at school, *Doughterty*, 654 F.3d at 898, Detective Wafstet described that: (1) Boudreau initiated contact with "Mia" through a social media platform (accessible on computers and smartphones), (2) Boudreau sent photos and text messages to "Mia" from applications accessible "from mobile devices or laptop and desktop computers," and (3) the messages that Boudreau sent to "Mia" expressed a repeated sexual desire and interest in minors. Crucially, Detective Wafstet also recounted that Boudreau admitted that he watched pornography and "would not state what search terms he used" when doing so.

Second, Detective Wafstet's affidavit also detailed his extensive specialized training and experience—including FBI training on undercover investigative techniques for "identifying sexual offenders"—and the opinions that he formed given his training and experience. Specifically, he discussed his knowledge of how "computers and digital technology are the primary way in which individuals interested in child enticement interact with each other and intended child victims." He also explained that common characteristics shared by individuals "who have a sexualized interest in children and are communicating with children online" are to "collect sexually explicit or suggestive materials in a variety of media" and to "maintain their child pornography collections that are in a digital or electronic format in a safe, secure, and private environment." Based on his knowledge of the undercover investigation using "Mia" and his training and experience, Detective Wafstet opined that the person who communicated with "Mia" "likely has a sexualized interest in children and depictions of children, and that evidence of child pornography and additional child enticement is likely to be found."

The affidavit laid a proper foundation for Detective Wafstet's opinions by detailing the common characteristics of individuals who have a sexualized interest in children and who communicate with children online, and why Detective Wafstet believed that Boudreau would be interested in "viewing images of naked children or of children performing sex acts." *Contra Dougherty*, 654 F.3d at 898–99; *Weber*, 923 F.2d at 1345 ("[I]f the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class."). And where an officer's

opinion derived from his training and experience is supported by a proper foundation, the district court may properly rely on it in weighing whether to issue a warrant. *See Gil*, 58 F.3d at 1418 ("[W]hen interpreting seemingly innocent conduct, the court issuing the warrant is entitled to rely on the training and experience of police officers.").

Given the totality of circumstances presented here, we conclude that the warrant, issued to search for evidence of a crime under Montana Code § 45-5-625, was supported by probable cause to believe not only that evidence of enticement would be found at Boudreau's residence, but also evidence of child pornography.

## B. Deliberate or Reckless Omissions

Boudreau also argues that his motion to suppress should have been granted because Detective Wafstet knowingly or recklessly omitted from his affidavit that Boudreau used only his cellphone to communicate with "Mia" and that the cellphone had already been recovered by officers before the search warrant was sought. Bourdeau contends that this omission misled the issuing judge into believing that the search could locate an electronic device that was used to communicate with "Mia."

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that "a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (2017). This inquiry is twofold. First, the defendant must prove that "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *Id.* (citation omitted). Second, the defendant must prove "that the false or misleading statement or omission was material,

*i.e.*, 'necessary to finding probable cause.'" *Id.* (citation omitted). If both prongs are proven by a preponderance of the evidence, then "the search warrant must be voided and the fruits of the search excluded." *Id.* (quoting *Franks*, 438 U.S. at 156).

Here, Boudreau's *Franks* argument fails because even if Detective Wafstet knew and failed to disclose that Boudreau used only his cellphone to communicate with "Mia,"[1] this omission was immaterial. As we have explained, there was probable cause to believe that Boudreau possessed child pornography. If Detective Wafstet lied or omitted material facts regarding Boudreau's method of communication with "Mia," it would have had no effect on the fair probability that Boudreau possessed child pornography. *See Perkins*, 850 F.3d at 1119 ("The key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" (citation omitted)). Either way, officers still had probable cause to search his home and seize any electronic devices capable of storing child pornography.

For these reasons, we affirm the district court's denial of Boudreau's motion to suppress.

## II. Motion to Sever

Next, Bourdeau argues that the district court erred by not severing the two charges in his indictment. An indictment may charge multiple offenses if they "are of the same or similar character." Fed. R. Crim. P. 8(a). We consider multiple factors when evaluating whether this standard is met: (a) "the elements of the statutory offenses," (b) "the temporal proximity of the acts," (c) "the likelihood and

---

[1]Boudreau fails to cite any record evidence to support this assertion.

extent of evidentiary overlap," (d) "the physical location of the acts," (e) "the modus operandi of the crimes," and (f) "the identity of the victims." *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007). The weight of each factor depends on the facts of the case. *Id.* We conduct this misjoinder inquiry de novo, *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016),[2] reviewing solely the allegations in the indictment, *Jawara*, 474 F.3d at 572. And even if misjoinder occurred, we reverse only upon a showing of actual prejudice under Federal Rule of Criminal Procedure 52. *Prigge*, 830 F.3d at 1098; *see also United States v. Lane*, 474 U.S. 438, 449 (1986).

Boudreau's indictment is brief. Count I alleges that he "knowingly and unlawfully used . . . the internet and a cellular telephone" to attempt to entice a minor. And Count II alleges that he "knowingly possessed an image of child pornography." The indictment does not detail the undercover operation involving "Mia" or the search of Boudreau's home that led to the discovery of child pornography.

Of the applicable factors, the first factor carries the most weight in this case. Enticement of a minor and possession of child pornography both involve as an element that the defendant sought to engage in inappropriate sexual activities with minors, in person or voyeuristically. *Compare United States v. McCarron*, 30 F.4th 1157, 1162 (9th Cir. 2022)

---

[2]The Government incorrectly suggests that abuse-of-discretion review is appropriate. This argument conflates the standard of review for two separate Rules. Rule 8 governs misjoinder while Rule 14 governs prejudicial joinder. "We review misjoinder under Rule 8(a) de novo and refusal to sever under Rule 14 for abuse of discretion." *Prigge*, 830 F.3d at 1098. Boudreau made an argument based on misjoinder below, and the district court ruled on that issue. And on appeal, Boudreau raises only Rule 8.

(holding that the elements of 18 U.S.C. § 2422(b) are that the defendant "knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense"), *with* 18 U.S.C. § 2252A(a)(5)(B) (prohibiting knowing possession of "child pornography"), *and* 18 U.S.C. § 2256(1), (8) (defining "child pornography" as a "visual depiction" of "a minor engaging in sexually explicit conduct" and defining "minor" as "any person under the age of eighteen years"). Our sister circuits that have addressed this issue have uniformly held that enticement of a minor is of the same or similar character to possession of child pornography. *See United States v. Rivera*, 546 F.3d 245, 253–54 (2d Cir. 2008) (concluding that five counts, including enticement and possession of child pornography, were properly joined because they were of a similar character); *United States v. Reynolds*, 720 F.3d 665, 669–70 (8th Cir. 2013) ("The charges of enticement of a minor to engage in illicit sexual activities, receiving child pornography, and production of child pornography 'are of the same or similar character.'"); *see also United States v. Hersh*, 297 F.3d 1233, 1242 (11th Cir. 2002) (holding that possession of child pornography and molestation of a minor were of a similar character).

The remaining factors are largely inapposite. Temporal and geographic proximity of the charged acts loosely support joinder, but they are not particularly strong considerations given the nature of the offenses at issue. Possession of child pornography is an ongoing offense, so the timing of its discovery is less relevant to its character. Similarly, on the facts presented, Bourdreau's possession was a virtual offense, so its physical location is not especially compelling. The indictment also does not provide sufficient detail to

understand the identity of the alleged victims, the likelihood of evidentiary overlap, or the modus operandi of the alleged offenses.

Because the elements of enticement of a minor and possession of child pornography overlap, we join our sister circuits and conclude that these offenses are of the same or similar character and that the district court did not err in denying Boudreau's motion to sever his indictment.

## III.   Motion in Limine

Boudreau next argues that the district court erred in denying his motion in limine to exclude evidence of his separate uncharged interactions with a 17-year-old girl named Hope under Federal Rules of Evidence 403 and 404. We review whether evidence falls within a particular rule de novo, but we review the admission of evidence for an abuse of discretion. *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019).

## A.   Rule 404(b)—Prior Bad Act

Boudreau first argues that admission of Hope's testimony violated Rule 404(b)(2) because it concerned a prior bad act. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose" such as to prove intent or lack of mistake. Fed. R. Evid. 404(b)(1), (2). We have held that evidence is admissible under Rule 404(b)(2) to prove something other than propensity if: "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that [the] defendant committed the other act; and (4) (in certain

cases) the act is similar to the offense charged." *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020).

The Government does not dispute that Hope's testimony concerned another crime, wrong, or act falling within the confines Rule 404(b)(1). And we agree. Therefore, Hope's testimony was admissible only to be used for a non-propensity purpose. The district court concluded that "all four *Lague* factors [were] met." For starters, it reasoned that evidence Boudreau had been "intimate" with a 17-year-old and had solicited nude images from her tended to prove a material point—that Boudreau was sexually interested in minors and therefore intended to entice "Mia" to engage in sexual activity rather than develop a platonic relationship with her. The district court also found that Boudreau's interactions with Hope were not temporally remote because they occurred the same month as the charged conduct involving "Mia." Additionally, although the jury did not see the texts where Boudreau asked Hope for nude photographs, her testimony was sufficient to establish this fact and to establish Boudreau's efforts to develop a relationship with her. And finally, the district court observed that Boudreau's conduct towards Hope was similar to the charged enticement.

The district court applied the correct legal standard in conducting its analysis, and nothing suggests that its understanding of the facts was clearly erroneous. Even if we agreed with Boudreau's contention that Hope and "Mia's" respective ages rendered Boudreau's interactions with them qualitatively different, that difference does not undermine the district court's conclusion that Hope's testimony was probative of Boudreau's sexual intent. *Id.* at 1040 ("In deciding where 'other act' evidence is relevant to prove intent, we defer to the 'district judge's own experience,

general knowledge, and understanding of human conduct and motivation." (citation omitted)).

## B.  Rule 403—Unfair Prejudice

Boudreau also argues that the district court erred in not excluding Hope's testimony under Rule 403 because "its probative value is substantially outweighed by . . . unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003).

The district court concluded that Boudreau's concerns about unfair prejudice related to Hope's protective order against Boudreau lacked merit because the Government agreed not to "prove any underlying criminal conduct related to the order of protection." It also concluded that any risk of unfair prejudice was "lessened" because the evidence about Boudreau's interactions with Hope was only admissible to prove Boudreau's intent, a fact about which it was highly probative. While the Government may have been able to prove its case without Hope's testimony, as Boudreau contends, that does not render the evidence unfairly prejudicial. Rather, it suggests that any error was harmless. *See Lague*, 971 F.3d at 1041. At trial, the jury heard properly admitted evidence of Boudreau's predatory behavior toward someone he believed was 12-year-old girl. In this context, it is unlikely that Hope's testimony caused the jury to convict Boudreau on an improper basis.

## IV.   Sentencing

Finally, Boudreau challenges the sentence imposed on his        possession-of-child-pornography        offense        as

substantively unreasonable. Specifically, he argues that § 2G2.2 of the Sentencing Guidelines is "seriously flawed" because it inflates the offense level, resulting in unjust sentencing disparities that are inconsistent with 18 U.S.C. § 3553. Because Boudreau does not assert that the district court committed procedural error at sentencing, we consider only "the substantive reasonableness of the sentence imposed," in light of "the totality of the circumstances." *Gall v. United States*, 552 U.S. 38, 51 (2007). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc) (citation omitted). We review the substantive reasonableness of a sentence for abuse of discretion. *Id.* at 1086. We may reverse only if we have "a definite and firm conviction that the district court committed a clear error of judgment." *Id.* (citation omitted).

Section 2G2.2 sets a base offense level of 18 for possession-of-child-pornography convictions. U.S.S.G. § 2G2.2(a)(1). It then provides enhancements depending on the underlying conduct. *See id.* § 2G2.2(b). For example, Boudreau was given a two-level enhancement because the unlawful material that he possessed involved minors under the age of 12, a four-level enhancement because the material portrayed sadistic or masochistic conduct or sexual abuse or exploitation of an infant or toddler, another two-level enhancement because the offense involved use of a computer, and a five-level enhancement because the offense involved more than 600 images.

Boudreau asserts that although his 154-month sentence was at the low end of the Guidelines range, it was nonetheless "excessive based on the nature of [the] § 2G2.2

enhancements." He points out that the Second Circuit has stated that "unless applied with great care, [§ 2G2.2] can lead to [substantively] unreasonable sentences." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). The Second Circuit has noted that the Sentencing Commission did not use its typical "empirical approach in formulating the Guidelines for child pornography," *id.*, and "many of the § 2G2.2 enhancements apply in nearly all cases," *id.* at 186. For example, a first-time offender can receive a sentence near the statutory maximum "based solely on sentencing enhancements that are all but inherent to the crime of conviction." *Id.* But the Second Circuit did not hold that a proper application of the § 2G2.2 enhancements automatically renders a sentence substantively unreasonable. *See id.* at 184 (holding that the district court imposed a substantively unreasonable sentence in part because it assumed that a statutory maximum sentence was consistent with the § 3553(a) factors). And whether the calculations established in § 2G2.2 are unfair or a good policy choice are matters for the Sentencing Commission and Congress.[3] Our job in the context of the challenge that Boudreau has raised is to address whether the sentence the district court imposed "is sufficient, but not greater than necessary to accomplish § 3553(a)(2)'s sentencing goals." *See Ressam*, 679 F.3d at 1089 (citation modified).

Boudreau's only mention of the § 3553(a) factors is a cursory argument that the district court ignored the potential for unwarranted sentencing disparities. It is correct that district courts must consider "the need to avoid unwarranted

---

[3]We observe that many of the enhancements at issue were promulgated by the Commission at the direction of Congress. *See Dorvee*, 616 F.3d at 184–85.

sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). And Boudreau argued below and on appeal that 120-months was the average sentence length for similarly situated offenders. The district court acknowledged the data that Boudreau referenced and treated it as part of "the whole panoply of what is available for the Court to consider in trying to determine what is a sufficient, but not greater than necessary sentence."

We find no error in the district court's decision. Boudreau's sentencing-disparity argument falters because he did not show that the other individuals he referenced as comparators were found guilty of similar conduct or had similar criminal history. Specifically, the comparators' Guidelines calculations were apparently driven by § 2G1.3, which governed Boudreau's enticement offense. The record demonstrates that average sentences under § 2G1.3 are volatile and are greatly influenced by the specifics of each case. And there is nothing suggesting that the comparators were also convicted of possession of child pornography and subject to a multi-count adjustment under § 3D1.4, as was Boudreau. If Boudreau had been convicted only of enticement, his Guidelines range would have been 108 to 135 months, based on an offense level of 30 and a criminal history category II. *See* U.S.S.G. Ch. 5, Pt. A (sentencing table). The multi-count adjustment directed under § 3D1.4 placed Boudreau's Guidelines range at 151 to 188 months, with an offense level of 33 and a criminal history category II. On this record, the district court did not abuse its discretion in concluding that the sentence it imposed did not result in unwarranted sentencing disparity.

**AFFIRMED.**